## HUGHES *et al. v.* KAW INV. CO.

(In Banc July 2, 1923. Suggestion of Error Overruled Sept. 24, 1923.)

[97 South. 465. No. 22821.]

1. MORTGAGES. *Landowner paying taxes due before sale of non-
   payment held not in default under provision in deed of trust
   accelerating due day for default in payment of taxes.*

   Where lands are advertised for sale by the sheriff because of
   nonpayment of taxes, and the taxes are duly paid before the
   day of sale by the landowner, he is not in default as mortgagor,
   and his lands may not be sold under the following provision of
   the deed of trust: "Or should default be made in the payment

of the taxes legally assessed against any of the hereinafter described property as due, then in any of said events the entire sum hereby secured with accrued interest then remaining unpaid shall immediately become due and payable at the option and election of the mortgagee herein, his heirs or assigns."

2. BILLS AND NOTES. *Note secured by deed of trust payable to order indorsed by payee with recourse held negotiable.*

Where a note secured by deed of trust on lands is payable to order, and indorsed by the payee as follows: "Pay to the order of John Smith without recourse"—this note is a negotiable instrument.

3. ASSIGNMENTS. *Law providing for notation on records of assignments of indebtedness held not to apply to negotiable instruments.*

Section 2296, Hemingway's Code (section 2795, Code of 1905), which provides for the notation on the records of assignments of any indebtedness, does not apply to a negotiable instrument.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKLER, Chancellor.

Suit by E. J. Hughes and others against the Kaw Investment Company. From a decree for defendant, plaintiffs appeal. Affirmed.

See, also, 129 Miss. 434, 91 So. 702.

*W. E. Morse,* for appellant.

This appeal is prosecuted on direct appeal and cross appeal from a decision of the chancery court of the first district of Hinds county in which the appellants were denied a ten per cent penalty imposed by statute and in which the appellee and cross-appellants were restrained and enjoined from selling Elton Plantation, a farm of five thousand acres in Hinds county, for nonpayment of the taxes for the year 1920, before the entire indebtedness under a conveyance was due. There was no interest or principal payment due at the time this forclosure proceeding was instituted. The only clause of the deed of trust that they attempted to proceed upon, was that the taxes had not been paid by December 15, 1920. The chancellor

133 Miss.—4

held that the company could not foreclose on account of taxes not being paid on or before December 15th that "as due" did not mean "when due" or "as due and payable." The court held that the undisputed evidence offered did not constitute a fraud; that we were not entitled to the ten per cent penalty of the principal and interest; that we were liable for the payment of interest due May 20, 1921, which fell due two months after the foreclosure proceedings had been instituted. If we had been allowed to collect the ten per cent. then there would have been no interest due.

The court will bear in mind first that the deed of trust makes a difference in the accelerating clause between the principal and interest on the one hand and the taxes on the other. With reference to the principal and interest it provides that should default be made in the payment of the principal and interest as due and payable, with the taxes, it provides that should default be made in the payment of taxes lawfully assessed against the hereinafter-described property "as due." In the first place as due means "as owing" "as unpaid" etc., the taxes are due up until the time they are paid or satisfied or up until the first Monday of April when they are satisfied by a sale of the land, to the state, or to an individual so that the taxes are no longer due but have been fully paid and satisfied. In other words, taxes paid before the property was actually sold inures to the benefit of the property owner, showing that this time is given to the property owner within which to pay his taxes.

No one could claim their property and no right by reason of the taxes not having been paid could intervene between the complainants herein until the property was actually sold which would have been on the first Monday in April, 1921. Even then these people would have two additional years within which to protect their interest. It is true that section 2197, Code of 1906, imposes a ten per cent. penalty, but that is payable by the delinquent taxpayer alone and the ten per cent. is not put

on as a penalty upon the property owner but as additional compensation to the sheriff and tax collector. See *Anderson* v. *Hawkes,* 70 Miss. 639, 12 So. 968. For cases construing "as" to mean "when" see: *Finance Company* v. *Anderson & Co.,* 106 Iowa 429; *Schroder* v. *St. Louis Transit Company,* 111 Mo. 67, 85 S. W. 968; *Colt* v. *Hubbard,* 33 Conn. 281; *Fester* v. *Johnson,* 38 N. J. 46.

Our construction is that "as due" means "as owing." It certainly was meant to apply taxes that were to accrue in the future, and the very terms of the deed of trust itself shows that they made different arrangements with reference to the principal and interest on the one hand— as due and payable—and the taxes on the other—as due —. We think that our interpretation of the word "due" is the proper one in this case. See "due," 19 C. J. 818. See also: *Swanson* v. *Spencer,* 164 S. W. 285.

Here was a mortgage running over a period of years with interest payable annually and the taxes to be paid on the property during the ensuing years. The parties knew that the taxes would have to be paid and they provided for their mutual protection. The interest must be paid as due and payable that is May 20th of each and every year; the taxes must be paid as due, that is sometimes before the taxes were paid or satisfied—by some one paying them or by a sale of the property for the satisfaction of the debt. You can search the authorities and you will not find a single case to immediately mature the indebtedness except where the parties fix it so that is the interpretation to be drawn from the instrument. The leading case on this question is *United States* v. *Bank,* 9 Peter (U. S.) 298 L ed. 308. See also *Hiller* v. *Neeves,* 83 Wisconsin 637.

But the cross-appellants claimed that we defaulted in the payment of taxes and that this is the real reason that they have a right to foreclose this property. But see *Osborn* v. *Rogers,* 1 N. Y. Supp. 623, 49 Hem. 245; *Union Trust Company* v. *Grant,* 111 N. W. 1039; *Germainia Life Insurance Company* v. *Potter,* 124 App. Div. 814, 109 N. Y. 435; *Fleming* v. *Franing,* 22 L. R. A. (N. S.) 560.

We have the Kaw Company attempting to make an illegal sale of Elton Plantation, for the non-payment of taxes as due, which the court construed to be unlawful, but aside from these facts it would be inequitable and unjust to allow these people to foreclose for nonpayment of taxes, especially where the complainants paid the taxes and offered to pay the cost of publication which was the only rightful cost that had accrued at that time. The Kaw Investment Company fraudulently attempted to get possession of Elton Plantation; it attempted to prevert the legitimate powers of the deed of trust to its selfish and unholy aims. The law on this sort of proceeding is stated in *Securiy Loan Company* v. *Lake,* 69 Ala. 465.

We next come to the proposition that the Kaw Investment Company is indebted to the complainants in a sum of ten per cent. of the record assignment made to it by S. E. Cobb. See section 2296 of Hemingway's Code. See also *LaFayette County* v. *Hall,* 70 Miss. 678; *State* v. *Marshall,* 100 Miss. 26, 56 So. 793. See *Farmer* v. *Hicks,* 45 Miss. 294; *Holmes* v. *McGuty,* 44 Miss. 94; *Robinson* v. *Moors,* 76 Miss. 89, 23 So. 631; *Powell* v. *McKee,* 81 Miss. 229.

Our court has enjoined deeds of trusts from sales where it was absolutely void notably in the case of *McWilliams* v. *Philips,* 51 Miss. 196. The Kaw Company was without authority to declare the deed of trust to be due and payable because there had been no breach of the conditions. They have no authority save that given to them in the deed of trust. There was not one cent of principal or interest due, the company was not apprehensive of their loan as they had just been notified that this loan was good for all time to come. They were told by their agent that Dr. Gay, a former owner of the land had stated that Harberts and Hughes would pay the taxes.

*Teat & Potter,* for appellees.

Under the terms of the deed of trust cross-appellees were

in default and the cross-appellants were entitled to declare the entire debt due. Section 4313, Code 1906, section 6948, Hemingway's Code. Section 2197, Code 1906, section 1882, Hemingway's Code, as amended by chapter 293, Laws 1920, provides, that the sheriff shall collect ten per cent as damages on all taxes collected after the 2nd day of February. It is admitted by the bill that taxes were legally assessed against this property and that the same had not been paid on the day defendant, Kaw Investment Company, the legal holder of the notes, exercised its option and declared the entire indebtedness due because of a default in the payment of the taxes as due. On this question the case of *Parker* v. *Oliver* from the supreme court of Alabama, 18 So. 40, is directly in point. See also *Stevens* v. *Cohen* (Mass.), 49 N. E. 926. Webster defines default to mean,. "a failure, an omission of that which ought to be done neglect to do what duty or law requires."

In the case at bar the law required that the taxes be paid on or before the 15th day of December, the statute reading, "It shall be the duty of every person to pay his taxes on or before the 15th day of December." Should he fail to pay on the 15th day of December, the tax-payer is then in default. He is liable to be sued. His taxes are liable to be collected by distress or otherwise. As stated before, the law imposes a penalty of ten per cent if taxes are not paid on or before the second day of February. Surely the state does not impose a penalty upon the tax-payer until he is in default. The sheriff in this case had advertised the land for sale because of the nonpayment of taxes. Surely the state does not advertise property for sale because of the nonpayment of taxes unless the taxpayer is in default. We respectfully insist that the chancellor erred in perpetuating the injunction because of the nonpayment of taxes and that this court should reverse the case and render judgment against the complainants' and their bondsmen because of the wrongful issuance of the injunction.

BRIEFS FOR APPELLEE ON DIRECT APPEAL. Counsel attempts to construe "as due" to mean "while owing" and to maintain that as long as taxes are owing that there can be no default within the meaning of the trust deed such as would authorize the foreclosure by the mortgagee. While owing—as long as the same is owing—let us follow this construction to its logical conclusion and see where the same would lead. Suppose that instead of using "as due" in connection with the taxes it had been used in connection with the principal, so that the same would read, 'should default be made in the payment of the principal as due the mortgagee shall have the right to foreclose.' Transposing as due for while owing, we now have this clause to read 'as long as the principal is owing then the mortgagee shall not have the right to foreclose.' The principal would be due and owing until barred by the statute of limitations and during the six-year period the mortgagee would be unable to protect himself by foreclosure, under counsel's construction. It would only cease to be owing when barred by the statute of limitations and when the debt is barred, the remedy is barred and the mortgagee could never obtain his money. Such a construction as this would render absurd a clause otherwise valid and reasonable.

This brings us next to the consideration of the question as to whether equity will permit a foreclosure solely because of a default in the payment of taxes as due. In other words will equity enjoin a foreclosure in violation of the contract of the parties where the holder of the indebtedness' has exercised an option granted him by the contract of declaring the entire debt due should the mortgagor fail to pay the taxes. 13 C. J. 541, 513; 13 C. J. 524, 485; *Sharpley* v. *Plant,* 79 Miss. 175-191; *Parker* v. *Oliver,* 18 So. 40.

No fraud was properly pleaded or proved. The chancellor found as a matter of fact that no fraud existed. There was no evidence that any fraud existed and if the motive of the Kaw Investment Company had been to pro-

cure the property, if they had a right to declare the debt due under the terms of the deed of trust this motive is immaterial. 1 C. J. 971; *Dickerman* v. *Northern Trust Company,* 44 L. Ed. 423-430, 176 U. S. 181-190; *Hamilton Traction Company* v. *Parish,* 67 Ohio (St.) 181, 65 N. E. 1911, 60 L. R. A. 531; *Pollitz* v. *Wabash Railroad Company,* 150 App. Div. 715, 135 N. Y. S. 789; *Macey* v. *Childress,* 2 Tenn. Chy. 438-442; *Noble* v. *Davidson,* 177 Ind. 19, 96 N. E. 325; *Banks* v. *Banks,* 118 Miss. 783, 79 So. 841. Our assignment statute, chapter 107, Laws of 1906, has no application to facts in case at bar.

*D. R. Hite,* for appellee.

This memorandum is intended to meet the argument made by appellants that section 2, of chapter 170 of the Laws of 1906, applies to the transactions shown upon this record; and, therefore appellants were entitled to a credit of fifty-five hundred dollars, ten per cent. of the amount of the notes secured by the trust deed; from which it is argued that even if they did not pay the taxes and the maturity of the paper was accelerated, still the amount due was less than claimed in the notice. The appellees contend that this section has no application to the transaction shown upon this record for the following reasons: (1) There was no "assignment" of the indebtedness secured by the deed of trust, within the meaning of this section. (2) The indebtedness involved in this controversy was evidenced by negotiable promissory notes and if the delivery of these notes, endorsed by Cobb, without recourse, constitutes and "assignment" the transaction is within the Negotiable Instruments Act of the state of Mississippi, in force at the time the notes in question were transferred. (3). This section is a penal statute within the meaning of the rule that the penal statutes of a state shall not have any extra-territorial operation; and, as the transfer of the notes in question took place outside of the state of Mississippi and within the state of Kansas, the act in question does not apply.

*W. E. Morse,* for appellant, in reply.

Counsel transposed "as due" for "while owing" and attempted to apply it to the statute of limitations. Our answer to that is, that the deed of trust provided that should default be made in the payment of principal and interest, "as due and payable" (and the date that the principal was due and the date that the interest was due was stated in the deed of trust) and provided with reference to taxes, or should default be made in the payment of taxes lawfully assessed against said property as due, showing a distinct and a different intent with reference to the taxes on the one hand and the principal and interest on the other. In other words, the taxes were owing from November up until the time they were satisfied which was the first Monday in April, when they were satisfied either by sale of land to an individual, or in the sale of land to the state for taxes. Appellee would have the court construe "as due" to mean "as due and payable." But the deed of trust does not so state and makes a default in the principal and interest—failure to pay as due and payable on one hand, and taxes as due on the other. Counsel for appellees takes the position that a court of equity has no jurisdiction with reference to altering contracts. This is a correct interpretation where a contract is clear and unambiguous. But a court of equity will prevent a forfeiture, Corpus Juris on Contracts, 13 C. J., section 512.

Argued orally by *W. E. Morse* for appellants and *Chalmers Potter* and *J. A. Teat* for appellees.

SYKES, P. J., delivered the opinion of the court.

The appellants by their bill seek to enjoin the sale of certain lands under a deed of trust. The default declared in the advertisement of sale was that default had been made in the payment of taxes. The clause relating thereto in the deed of trust is as follows:

"Or should default be made in the payment of the taxes

legally assessed against any of the hereinafter described property as due, then in any of said events the entire sum hereby secured with accrued interest then remaining unpaid shall immediately become due and payable at the option and election of the mortgagee herein, his heirs or assigns."

The taxes had not been paid by the appellants before the time came and the lands were advertised for sale by the sheriff for nonpayment thereof. The sale was to be made April 1st. When this fact was ascertained by the owners of the notes, some time in March, they advertised this land for sale under the deed of trust. Shortly thereafter, and before the day of sale, the appellants paid the taxes.

The question here presented is whether or not under the clause of the deed of trust above quoted the appellees had a right to dclare a forfeiture and sell the lands. Technically speaking, taxes are due December 15th. If not paid by February 1st, a penalty accrues. The taxpayer, however, has the right to pay the taxes at any time before the land is sold. This clause is a penal one, and must be strictly construed against the creditor, and liberally construed in favor of the debtor. Since the debtor has the right to pay these taxes at any time before the lands are sold, a forfeiture under this clause of the deed of trust cannot be declared at least until the day of the sale of the land. The chancellor so held upon this question.

The note in this case was payable to the order of S. E. Cobb, and was indorsed as follows:

"Pay to the Kaw Investment Company without recourse.
[Signed] S. E. COBB."

This indorsement was not noted on the record of Hinds county within thirty days from its execution. It is contended by the appellants that, under section 2296 of Hemingway's Code (section 2795, Code of 1906), because of this failure the owners of the notes forfeited to the mortgagors ten per cent. of this indebtedness. This section reads as follows:

"All assignments in whole or in part of any indebtedness secured by mortgage, deed of trust, or other lien of record, shall be entered on the margin of the record of the lien within thirty days from the day of said assignment, or said assignment shall be acknowledged and filed for record within said time, and if the assignee of said indebtedness fail to comply with the provisions of this section he shall forfeit to the debtor ten per cent. of the amount of said indebtedness."

The question here presented is whether or not this statute applies to the indorsement of a negotiable instrument. It was passed when our anti-commercial statute was in full flower. Under that statute all notes were nonnegotiable, except those payable to bearer; consequently a negotiable instrument was not within the terms of the statute. There is a difference between "assignment" and "indorsement." Indorsements of negotiable instruments are of various kinds, as especially pointed out in our Negotiable Instrument Acts. A note made payable to order and indorsed in blank thereafter passes by delivery. If this statute were applicable to negotiable instruments, it would depend upon the nature of the indorsement as to whether the penalty applied. If the note were indorsed in blank, neither the taker from the indorser nor any other taker could be liable under the statute, for the reason that it was not specifically *eo nomine* made payable to him. On the other hand, if it were made payable to one by name as in this case, the statute would apply. In other words, the nature of the indorsement, under that theory, would determine the liability of the indorsee to the penalty. This is not the law. While the word "assignment" is a broader term than the word "indorsement," and sometimes includes it, this section was dealing solely with nonnegotiable instruments, and the assignment therein referred to was the assignment necessary to nonnegotiable instruments, and not the indorsement of a negotiable instrument.

" 'Assignment' is a broader term than 'indorsement,'

and is more comprehensive than the terms 'indorse,' 'negotiate,' or other likewords, as applied to commercial paper. Assignment is generally used to signify the transfer of nonnegotiable instruments, while indorsement is used to signify a transfer of negotiable instruments." 5 Corpus Juris, p. 841.

The use of the word "assignment" in this statute referred only to nonnegotiable instruments, and was not meant to, and does not, include the various indorsements of negotiable instruments. The chancellor held that the indorsees of the note were not liable to this penalty. This is also a penal statute, and must be strictly construed.

The decree of the lower court is affirmed.

*Affirmed.*

Cook and ETHRIDGE, JJ., dissenting in part.

ETHRIDGE, J.   I dissent from that part of the opinion which holds that section 2296, Hemingway's Code (section 2795, Code of 1906), is not applicable to deeds of trust securing negotiable instruments. Section 2296, Hemingways Code (section 2795, Code of 1906), is set out in the majority opinion, but it ought to be construed in connection with section 2295, Hemingway's Code (section 2794, Code of 1906), and with section 2306, Hemingway's Code (section 2805, Code of 1906), and chapter 196, Laws of 1910, amending section 2805, Code of 1906, and the meaning and purpose of the legislative scheme determined from a reading of all these sections together. In other words section 2296, Hemingway's Code (section 2795, Code of 1906), does not stand alone, and a construction which might be reasonable if it stood alone may not be reasonable when considered with other sections *in pari materia.*

Section 2295, Hemingway's Code (section 2794, Code of 1906), reads as follows:

"When the indebtedness, or any part thereof, secured by a mortgage, deed of trust, or other lien of record shall be assigned by the person appearing by the record to

be the creditor, he shall be required by the assignee to enter the fact of the assignment on the margin of the record of the lien; and in default of making such entry, any satisfaction or cancellation of the lien or instrument evidencing it entered by the original creditor shall release the same as to subsequent creditors and purchasers for value without notice, unless the assignment be by writing duly acknowledged and filed for record; and every assignment by an assignee of any such lien shall be entered in like manner and with like effect in case of failure."

Section 2306, Hemingway's Code (chapter 196, Laws of 1910), among other things provides:

"But the clerk shall not record any mortgage or deed of trust in which the name of the beneficiary is not disclosed therein; and if such instrument is recorded, it shall not impart notice to any one; provided, the failure to disclose the name of the beneficiary shall not apply to mortgages and deeds of trust given by corporations either foreign or domestic, to secure the payment of serial bonds payable to bearer; and the assignment or transfer of such mortgages or deeds of trust or bonds secured by the same need not be entered on the margin of the record. But it shall be the duty of the holder of such securities covered by this proviso to list and assess the same for taxation, if liable for taxation, in the hands of the holder, such list or assessment; to show the amount, date, due and value of such securities of such corporation so made payable to bearer, and on failure of the holder to so assess the same, all interests thereon, shall be forfeited in his hands and as against him, and he shall be denied the right to recover such interest in the courts of the state."

The original section of the Code of 1906 (2805) ended as follows:

"But said clerk shall not record any mortgage or deed of trust in which the name of the beneficiary is not disclosed therein, and if such instrument is recorded it shall not impart notice to any one."

The legislative policy is clearly indicated in the last

sections, and especially by chapter 196, Laws of 1910 (section 2306, Hemingway's Code), which makes its own exceptions by providing that the failure to disclose the name of the beneficiary shall not apply to mortgages and deeds of trust given by corporations, either foreign or domestic, to secure the payment of serial bonds payable to bearer.  This is plainly a legislative declaration that the section shall apply to all deeds of trust and mortgages not excepted from the operation of the section under the rule that, where the legislature enumerated the things to be excepted, the enumeration embraces all that is intended to be excepted, and all other classes are included.  These sections deal with the record of instruments, and have no bearing on the negotiability or nonnegotiability of instruments.  The statutes probably intend to serve several purposes, one of which was to enable the debtor to know who his creditor was so that he might deal with his obligation in the light of such information, and the suit before us demonstrates the benefit of having such knowledge because the maturity of all the debt is attempted to be accelerated in the case before us without any notice to the debtor in advance of the acceleration.  The sections also intend to give information to the taxing authorities as to who is the owner of the recorded debt so that the state, counties, and municipalities may have such debt listed for taxation.  It may be that the instrument which is secured by the mortgage is a negotiable instrument, and under our law the security passes with the transfer of the debt; but people are supposed to make their contracts in view of the law, and, if it is desired that a note should be negotiable and pass from hand to hand by delivery, that purpose could be carried out by either not taking the security or not placing it of record, taking the consequences in either case that would follow such action.  The state has full power to deal with the record of instruments, and to provide such conditions as it may deem best for the public interest.  In my humble opinion the decision in the present case emasculates the statute, and defeats the pur-

pose indicated by the Legislature. The statute may not be a wise one, and may be in fact subversive of the public welfare, but that is a question with which the court has no kind of concern, because the shaping of public policy and the making of laws is for the legislative department.