SCHWARTZ *v.* SMITH.

[99 So. 436. No. 23789.]

(En Banc. March 24, 1924.)

ASSIGNMENTS. *Assignments of lien indebtedness need not be entered on margin of record in case of negotiable instruments.*

Section 2795, Code of 1906 (section 2296, Hemingway's Code), which provides that all assignments of any indebtedness secured by mortgage, deed of trust, or other lien of record, shall be entered on the margin of the record of the lien within thirty days from the day of said assignment, etc., does not apply to negotiable instruments.

APPEAL from circuit court of Bolivar county.

HON. W. A. ALCORN, JR., Judge.

Proceedings between S. Schwartz and John T. Smith. From the judgment rendered, the former appeals. Reversed, and judgment rendered.

*Shands, Elmore · & Causey* and *Miss Lucy Somerville,* for appellant.

Section 2297 of Hemingway's Code (section 2795, Code of 1906), does not apply to a negotiable instrument. *Hughes, et al.* v. *Kaw Inv. Co.,* 97 So. 465. If the court had held the statute applicable to negotiable instruments it would have fixed upon all such instruments a condition, in direct contravention to the Uniform Negotiable Act, section 1 (Hemingway's Code, section 2579) adopted in 1916, which requires that an instrument to be negotiable must contain an unconditional promise or order to pay a certain sum in money. As stated by the court in *Culbertson* v. *Nelson,* 61 N. W. 854, notes and bills of exchange in a sense are a part of the circulating medium of the whole country, and "it is exceedingly important that state lines should not mar the symmetry of the rules governing such paper."

And where, as in the case at bar, the note is negotiated in a foreign state, among persons unfamiliar with the provisions of Mississippi statutes, any other decision than that rendered by the court in *Hughes* v. *Kaw Investment Company,* would have seriously hampered commercial intercourse between citizens of Mississippi and citizens of other states. The position taken by the court was forecasted in *Scruggs* v. *Northern, etc.,* 123 Miss. 169, 85 So. 89. Under the authority of *Hughes* v. *Kaw Investment Company,* the contention of the appellant herein should be sustained.

*Clark, Roberts & Hallam,* for appellee.

Chapter 107, Laws of 1906, sections 2795 and 2796, Hemingway's Code, must be considered as a whole. We submit to the court that in our opinion the second section, out of a violation of which this action grew, was enacted by the legislature and intended by it to provide a means of enforcing the first section of this chapter. How were the taxing authorities to know that banks and corpora-

tions had transferred the indebtedness secured by mortgages and deeds of trust to others, it may be to those individuals who had in fact advanced the money, unless the assignees were required to indicate such transfers on the public records? Without such notice this property would escape taxation., It is said by this court in *Hughes et al.* v. *Kaw Inv. Co.,* 97 So. 465, that " 'assignment' is a broader term than 'indorsement,' and is more comprehensive than the terms 'indorse,' 'negotiate,' or other like words, as applied to commercial paper." This is undoubtedly true, and we think for that reason it includes "indorsements," and that the legislature in using this word meant to use it in its fullness.

It occurs to us that the legislature has already, in section 2306, Hemingway's Code (chapter 196, Laws of 1910), four years after the passage of chapter 107, Laws of 1906, attempted to use the broadest possible terms in giving its meaning to this statute, for we note in this section not only the word "assignment," but the other all-embracing word "transfer" is used here. Under our Uniform Negotiable Act, practically all forms of indebtedness, certainly all promissory notes, are now negotiable, and if this court adheres to its decision in *Hughes et al.* v. *Kaw Inv. Co.,* then we think the purpose of the legislature in enacting section 2 of chapter 107, Laws of 1906 (section 2296, Hemingway's Code), is defeated, and that one method therein provided to compel tax-dodgers to disclose their ownership of property is defeated and destroyed.

Under section 3527, Hemingway's Code (section 1, chapter 107, Laws of 1906), what would be easier than for a bank to use its own money in making loans, and then subsequently transfer those loans to favored individuals by indorsement of negotiable paper? All parties could thereby escape both taxation and the penalties, if no record is required of the individuals to whom the indebtednesses are transferred. It strikes us that this decision opens wide a door to those who are unwilling to bear their share of the public burden.

But it is urged that this is a penal statute, and should, therefore, be strictly construed. Replying to such an argument, see *Bobo* v. *Board of Levee Commissioners for Yazoo-Mississippi Delta,* 46 So. 819. The purpose of the statute under consideration, we think was to compel the owner of the indebtedness to disclose his ownership by complying with the statute, regardless of the negotiable character of that indebtedness. Counsel for appellant correctly give the definition of a negotiable instrument, that "it is an unconditional promise to pay a certain sum in money," but as observed by the learned judge of this court above quoted, "people are supposed to make their contracts in view of the law. . . . The state has full power to deal with the recording of instruments, and to provide such conditions as it may deem best for the public interest."

In view of the foregoing, we respectfully, but seriously, urge that the court should hold section 2296, Hemingway's Code to include, in accordance with the language of that statute, "any indebtedness secured by a mortgage, deed of trust, or other lien of record," regardless of whether such indebtedness be represented by negotiable paper, or not. What language could be broader or more comprehensive than the expressions "assignments" and "any indebtedness?" We do not think that it is against the interest of the state of Mississippi to protect itself and its people. Each of the different states has some method of protecting its mortgagors. Some of them have equity of redemption for two or three years. If the mortgagees can transfer their debts without making a record of them, pass title and, allow the assignees to proceed to foreclose under deeds of trust without recording the assignment, it would seem that our mortgage records lose much of their value. The mortgagee can transfer the negotiable evidence of the debt, the assignee can proceed to foreclose, and the mortgagor be entirely ignorant as to whom he should pay. This court has repeatedly held that the assignment of the note secured by a mortgage is

*per se* authority to the assignee to enforce the mortgage. *Holmes* v. *McGuty,* 44 Miss. 94. See, also, *Farmer* v. *Hicks,* 45 Miss. 294. With the foregoing brief presentatation of the matter, we again respectfully submit that the legislature intended section 2296 of Hemingway's Code to include negotiable instruments.

*Garland G. Lyell, Fulton Thompson, J. Harvey Thompson, and R. H. Thompson,* also for appellee.

The appellee asks the court to reconsider the decision made in *Hughes* v. *Kaw Investment Company* and overrule and disregard it. In that case, 97 So. 465, this court seemingly recognized the word "assignment" as being broader and more comprehensive than the words "endorse," "negotiate," and like words, as applied to commercial paper, and yet held it did not embrace them. The title to the act approved April 13, 1906, and the first section thereof are significant in showing the intent and purpose of the legislature in adopting its second section, the prototype of the Code section now under consideration. The statutory language is, "all assignments in whole or in part of any indebtedness secured by mortgage, deed of trust, or other lien of record." The question is, we submit, a simple one, and is this: Can a negotiable instrument be secured by mortgage or deed of trust of record? If so, then all perfect and complete assignments of such negotiable instruments, no matter in what form made are within the statute.

It seems to our minds that it is impossible to find warrant in the statute for the conception that the statute was intended to be applicable to some assignments of debts secured by mortgages or deeds of trust of record, and not to all assignments of such debts.

Bear in mind, the question is not one pertaining to the law of negotiable instruments, but is one of statutory construction. It is certainly true that there is no constitutional objection to the statute, and the only question is one of the construction of its terms. When the statute was enacted a large proportion of debts, probably not less

than eighty-five per centum of them, evidenced by negotiable instruments, were secured by mortgages or deeds of trust of record. Can it be reasonably conceived that the legislature intended the statute to apply to only a small proportion of such debts and not to apply to the larger proportion of them, and that too, when it used the broadest of terms, "assignment," including all modes and manners of transferring debts? Think of it, the statutory terms are, "all assignments of any indebtedness secured by mortgage or deed of trust of record." How can an exception be engrafted on these terms?

It is true the statute is a penal one to be strictly construed, but it should not be construed out of existence. To construe it as was done in the Kaw Investment Company case, is to construe it out of existence so far as concerns eighty-five per cent of the cases clearly within the evils sought to be remedied by the statute.

What is to be done in case a mortgage of record secures a debt evidenced by a negotiable promissory note and also a debt evidenced by an account for advances to be made? There are many such deeds of record in this state. In the case of such a deed, the court cannot award a part of the penalty but must award the whole or none at all. *State ex rel.* v. *Edward Hines Lumber Company,* 106 Miss. 780 (at page 801), s. c. 64 So. 729. If deeds securing both negotiable instruments and open accounts be considered along with those securing only negotiable instruments it can be assumed that ninety per cent of all deeds of record securing debts will be excluded from the operation of the statute if the Kaw Investment Company case shall remain the law of this state.

While the statute, Code 1906, section 2795, is not in form an amendment of the preceding section (2794) it is a supplement or addition to that section and should be construed in harmony with it. They are *in pari materia;* each is designed to remedy the same evils.

The evils intended to be remedied by these sections and by section 2306, Hemingway's Code (Laws 1910, chapter

196), are well stated by Judge ETHRIDGE in the dissenting opinion in the Kaw Investment Company case, but he fails to state one of them, which is this: The grantor in a mortgage or deed of trust is entitled to notice of an assignment of his debt and to know by whom he is entitled to have the mortgage or deed of trust cancelled of record when the secured debt is paid. Mortgagors are frequently inconvenienced in obtaining new loans and in the sale of their lands and other property upon which an unsatisfied mortgage is apparent of record, after the debt secured by it has been paid.

With all due respect to the court, we cannot think otherwise than that the statement in the majority opinion in the Kaw Investment Company case, to the effect that the statute when enacted had no application to mortgages securing negotiable instruments is an erroneous one. There were of record in this state when the statute was enacted, many mortgages on lands in this state which were wholly without and not affected by our old Anti-Commercial statute, and the statute now under consideration was passed in full view of this fact, and yet no exception was made of them. Our old Anti-Commercial statute never had application to promissory notes executed and payable without this state, nor to notes payable to bearer or payable to a designated person or bearer.

A chose in action, such as promissory notes and bills of exchange, was not assignable at common law, although equity recognized them. 1 Bouvier's Law Dictionary (Rawles' Third Revision) Title Assignment, p. 269. They were made assignable, when payable to order, by general or special endorsement, by statutes 3 and 4 Ann. Same Volume, p. 263.

In the case of *Andrews* v. *Carr*, 26 Miss. 577, the payee in a promissory note, a resident citizen of Georgia, died and an administrator was appointed in that state of the estate of the decedent. An assignee of the administrator brought suit upon the note in this state; he did not charge in his declaration that the note had been "endorsed" to

him.   The declaration was demurred to and the demurrer was sustained by the trial court.   The declaration averred only that the note was "transferred, assigned" and delivered to the plaintiff.   This court reversed the judgment of the trial court on the demurrer, holding that "when a man in pleading says that he has acquired a title by 'assignment' he is understood to mean a written assignment, unless he qualifies this meaning of the word." While *Andrews* v. *Carr,* may not be exactly in point, it is authority showing that the assignment of a promissory note embraces an endorsement of it.   The endorsement of a negotiable instrument is but a short form of an assignment of it, brought into use by a statute for the convenience of merchants and traders and has never lost its character as an assignment.

*How the word assignment is used in another statute.*

The words "assignment" and "assignee" are used in Code of 1906, section 717, providing that, "the assignee of any chose in action may sue for and recover on the same in his own name, if the assignment be in writing." This statute has application to negotiable instruments assigned alone by endorsement. Its application has never been questioned, and we think never will be.   The first case in this court, of which we are advised, construing this statute was one by a plaintiff to whom the note sued upon had been endorsed by the payee.   *Phipps* v. *Shegog,* 30 Miss. 241.

No particular form of words is required to constitute a valid assignment of a chose in action.   Any act showing an intent to transfer the party's interest is sufficient for that purpose.   *Macklin* v. *Kinealy,* 141 Mo. 113; s. c. 41 S. W. 893, 895.   An assignment is defined as a setting over or transferring the interest a man has in anything to any other.   This definition includes the case of the transfer of a note payable by delivery merely.   *Edison* v. *Frazier,* 9 Ark. (4 Eng.) 219, 220.   An assignment is a setting over or transferring the interests a man hath in anything to another, and the word is often used by writers

on Mercantile Law to express such a transfer. Hence, a transfer of negotiable paper by endorsement or delivery is an assignment thereof. *Jagoe* v. *Alleyn* (N. Y.), 16 Bart. 580, 582.

*Further observations on the statute, Code* 1906, *section* 2795, *Collateral Security.* The only limitation, an entirely reasonable and proper one, that can, in our judgment, be placed upon the statute is this: We do not think it could be applied to any person or corporation to whom evidences of indebtedness had been assigned merely as collateral security, because such an assignment is not a perfect one. The word "assignments" used in the statute means perfect and complete assignments of all interest in the debts transferred. The holder of collateral securities, no matter how the debt be evidenced, is not the absolute and exclusive owner of the securities; he is only a conditional owner, and owes duties to the person from whom he received the collaterals. The statute we feel sure applies only to complete and perfect assignments of every interest in the assigned debts the assignee being under no obligation to any other person respecting them, except such duty as a creditor may owe, if any, to his debtor.

The notes in question were executed in this state, were payable here, and the parties to them were at the time of their execution citizens and residents of this state. The notes were Mississippi contracts and are to be construed by the laws of this state, and this is true of the equitable mortgage by which they were secured. The notes and the mortgage were executed with knowledge of the statute and are just as subject to it as they would be had the statute been expressly made a part of the contracts between the parties.

Again we repeat and put emphasis upon what we conceive to be the fact, that this case does not present any question of law pertinent to negotiable instruments; it presents only a question of statutory construction and the statute relates to the registry laws of this state, or more properly to the perfection of the record of deeds.

If, however, the Negotiable Instrument Act can be held to have application or reference to the subject-matters of this suit, it will be remembered that it and the Code section under construction are both parts of the same Code of laws, the legislature having adopted (Laws 1922, p. 370, ch. 286) Hemingway's Code, containing both statutes. The two statutes, therefore, must be construed together and force and effect given to each. If the Negotiable Instrument Act considered alone has any application to cases of the character of the one at bar, section 2795, Code of 1906, is an exception to it.

COOK, J., delivered the opinion of the court.

In January, 1920, the appellee, John T. Smith, purchased a tract of land in Bolivar county, Miss., from Phillip Guerri and wife, and as a part of the consideration therefore he executed his promissory note for eleven thousand five hundred dollars the payment of which was secured by a vendor's lien reserved in the deed conveying the land to him. This note was payable at the Cleveland State Bank, of Cleveland, Miss., and the deed to appellee was recorded in Bolivar county. Before the maturity of the note Guerri sold it to the appellant, S. Schwartz, a citizen of the state of New Jersey, and it was duly transferred to Schwartz by indorsement and delivery, but the assignment thereof was never recorded or entered on the margin of the record of the lien securing it. When the note matured, a payment was made thereon, and by agreement the balance was extended for one year. At the expiration of the period of extension, the appellee filed an attachment suit in the circuit court in which he sought to recover from the appellant, Schwartz, the ten per centum forfeiture declared in section 2795, Code of 1906 (section 2296, Hemingway's Code), for failure to note the assignment of the indebtedness on the margin of the record of the lien securing the same, and he secured the issuance of a writ

of garnishment directed to the Cleveland State Bank, where the note was held for collection. He then proceeded to the bank and paid the balance due on the note, and the writ of garnishment was immediately served on the bank, the attachment being for the sum of one thousand one hundred fifty dollars, ten per cent. of the amount of the original note, alleged by appellee to be due him by reason of the failure of the appellant to have the fact of the assignment of the note to him noted on the record. Thereafter a trial on the merits was had, and at the conclusion of the evidence the defendant requested a peremptory instruction, which was refused, but the court granted a peremptory instruction directing the jury to find for the plaintiff for the one thousand one hundred fifty dollars sued for, with interest, and, from the judgment entered in pursuance of this instruction, this appeal was prosecuted.

This case involves the construction and application of section 2795, Code of 1906 (section 2296, Hemingway's Code), which provides that the assignee of any indebtedness secured by mortgage, deed of trust, or other lien of record shall forfeit to the debtor ten per cent. of the amount of such indebtedness, unless he shall, within thirty days from the day of said assignment, enter the assignment on the margin of the record of the lien, or have the same acknowledged and filed for record within said time.

After the decision of this case in the court below, this court, in the case of *Hughes* v. *Kaw Investment Co.*, 97 So. 465, had under consideration the identical question now presented, and it was there held that "the use of the word 'assignment' in this statute referred only to nonnegotiable instruments, and was not meant to, and does not, include the various indorsements of negotiable instruments," Justice ETHRIDGE and the writer dissenting from that part of the opinion so holding.

In the elaborate and very able briefs of counsel for appellee, the correctness of the construction placed upon

this statute in *Hughes* v. *Kaw Investment Co., supra*, is assailed, and we are urged to overrule it in so far as it holds that the statute has no application to negotiable instruments. On account of its importance and the divergence of view of the judges in the decision of the Kaw Investment Company Case the question has been again considered by the court en Banc, and the majority of the judges adhere to the views expressed by them in that case. Consequently, it is controlling here, and is decisive of the case at bar. The note which was the basis of the present suit was negotiable, and upon the authority of *Hughes* v. *Kaw Investment Co., supra*, it follows that this statute has no application to this note, and that the peremptory instruction requested by the appellant should have been granted.

The judgment of the court below will therefore be reversed, and judgment entered here for appellant.

*Reversed, and judgment for appellant.*