THOMPSON, J.
This is a suit by an injured employee for compensation under Act No. 20 of 1914, as amended by Act No. 243 of 1916 and Act No. 38 of 1918.
The plaintiff was employed by the defendant as a teamster, doing hauling in the oil fields of Caddo parish, and while so employed he got his left leg broken just below the knee.
The defendant admits the contract of employment, and admits that the plaintiff was receiving wages at the rate of $4.50 per day, or $31.50 per week of seven dáys. It is also admitted that the plaintiff’s leg was broken as alleged, and while the plaintiff was performing services arising out of and incidental to his employment in the course of his employer’s trade and business.
The defense is that the business in which defendant was engaged and for which plaintiff was employed was not hazardous, and did not come within any of the trades, occupations, and businesses designated and defined in the compensation statute. In the alternative it is alleged that, if any compensation is due' at all, it cannot be for a period longer than eight weeks, that being the maximum time for such a break of the leg thoroughly to unite and heal; that any delay beyond that period was caused by the diseased condition of plaintiff’s blood. The district judge was of the opinion that the business in which the defendant was engaged and for which plaintiff was employed was not included in the statute, and he rejected the plaintiff’s claim for that reason.
The statute provides compensation for injuries received by:
“Every person performing services arising out of and incidental to his employment in the course of his employer’s trade, business or occupation in the following hazardous trades, businesses and occupations.” Act No. 20 of 1914, § 1.
Then follows a list of the trades, businesses, and occupations which are defined as hazardous and which are specifically brought within the terms of the statute. The list may be divided into six groups, and is preceded by the statement:
“The operation, construction, repair, removal, maintenance and demolition of,” etc. Id.
The first group includes oil, gas, sulphur, salt, and other wells, lumber yards, building material yards, derricks, bridges, etc. The second group includes logging and lumbering. The third, fourth, and fifth have no application. The s.ixth group includes the installation, repair, erection, removal, or operation of boilers, engines, and other forms of machinery. '
The petition in this case alleges, the evidence established, the defendant admits, ami the trial judge concedes in his written opinion that the business, trade, and occupation of the defendant before, at the time of, and during the term of plaintiff’s employment and injury was the hauling, removing or removal, transferring, and transporting by mule teams and wagons in' the different oil fields, including that of Oaddo, logs, timbers, boilers, engines, pumps, pipes, and all other forms of machinery and material, supplies, and appliances necessary for the construction, operation, repair, maintenance, demolition, and removal of oil and gas wells and' oil and gas well derricks.
[1] The defendant had nothing to do with drilling of ,an oil or gas well, nor with the construction, erection, maintenance, repair, operation, or demolition of oil.and gas wells, nor with the placing or laying of pipe, nor with the erection of the derricks; but his business did include the hauling of logs, timber, and lumber, and drill rigs, and the placing of same on the ground, and the hauling of machinery and appliances to be used in con- - nection with the erection and operation of oil and gas wells; and that was his exclusive *538 business in the oil fields. It goes without saying that no oil or gas well could be constructed and operated without the logs and timbers for the derrick and without the machinery and other appliances. Therefore the furnishing of same and the placing of same upon the-location for the well was to all intent and purpose the initiation, the beginning, and a part of the construction and erection and putting in operation of an oil well within the meaning of the statute.
[2] But, conceding that we are wrong in this construction, then certainly the hauling of the logs, timber, and lumber for the derrick was “logging and lumbering” in the sense in which these terms are used in the statute. It has been held that a mere laborer employed as a part of a logging outfit engaged in cutting down trees and sawing them into logs comes within the terms of the statute. Bell v. Hanson Lumber Co., 151 La. 824, 92 South. 350; Dick v. Gravel Logging Co., 152 La. 994, 95 South. 99.
It would be a very narrow and strained construction of the statute, to say that a workman who moved the derrick timber and who was injured while unloading such timber was not engaged in a hazardous business, while the workman who immediately proceeded to erect the derrick with the timber was embraced within the- terms of the statute. "
[3] The occupation and business of the defendant was likewise within the sixth group of hazardous occupations as we have arranged them. He was engaged in the removal of the boilers, furnaces, engines, pipe, and all other fixtures and appliances used in the construction, operation, etc., of oil and gas wells. The removal involved and included the hauling of such machinery to the place of a new well as well as from such place to another place when an old well was demolished or dismantled. Here, again, we think the defendant’s counsel and the learned district judge have placed too great a limitation and restriction on the words of the statute. The interpretation would exclude all workmen who were engaged in hauling or moving machinery, etc., prior to the time it is used in construction as well as after it is taken down and ready to be moved. In other words, the ruling gives to the word “removal,” as used in the statute, the same meaning as demolishing, dismantling, and tearing down, and differentiates its meaning entirely from the words “hauling,” “transferring” or “transporting.” The statute makes use of the words “demolish” and “removal,” and the two are not synonymous in the sense, in which they are used. The word “demolish” means to destroy, to tear down, or to throw down, as a building, wall, or the like; while the word “remove” is defined to be the act of removing; translation from one place to another; a removal, a transfer from one place to another. See Standard Dictionary.
The work of demolishing or tearing down of an oil well outfit and derrick is entirely distinct from the act of carrying away or the removal to 'another place of the machinery and appliances thus torn down. The workmen, however, engaged in both the tearing down and in- the removal are equally within the terms of the statute, and neither should be excluded therefrom. Again we repeat in this connection that, it is placing too strict a construction and too narrow a limitation on the' statute to say that the workman who delivered the engine and boiler on the ground was not within the terms of the statute, while the workman who immediately proceeded to install the ehgine and boiler was embraced therein.
In considering the workman’s compensation statute, in Dick v. Gravel Logging Co., 152 La. 993, 95 South. 99, we said:
“It is humane in its purpose, and its scope should be enlarged rather than restricted. Its provisions should be liberally construed, so as to include all services that can be reasonably said to come within them.”
*540 In the present case, however, we need not apply the doctrine of liberal construction. The terms of the statute are broad enough and comprehensive enough to1 include aE workmen and all persons engaged in “logging and lumbering” and in removing machinery, fixtures, and appliances to be used in the construction and operation of oil and gas wells. Our conclusion, therefore, is that the business of the defendant comes within the terms of both the letter and the spirit of the workman’s compensation statute.
The medical testimony is to the effect that an ordinarily healthy man would recover from such an injury as a broken leg and be able to return to work in about eight weeks. The physicians say that the delay beyond that period in plaintiff’s case was due to the fact that he was suffering from dormant syphilis, and that the condition of his blood prevented the rapid' uniting and knitting of the broken parts together. It is on this showing that it is urged that plaintiff should not receive compensation for more than eight weeks.
The plaintiff had both bones in his leg broken. The accident occurred November 18, 1918, and the break had not entirely healed at the time of the trial in the lower court, which was six months after the accident. At the time of the trial he was still unable to do any work, and it was the opinion of some of the physicians that he would be entirely well within five or six months, while others fixed an earlier date.
[4] The plaintiff testified that he had never had syphilis; that he was a married man, and had several healthy children; that he was healthy and able to work, and had been at work all the while prior to his injury. In view of this testimony we are not prepared to hold that the plaintiff is not, entitled to recover the entire compensation due him under the statute, because a single biochemical test showed a positive reaction of syphilis. The physician who made the test testified that the positive reaction would not show in all stages. As a rule it' does not show in the first. It is not claimed that the plaintiff had the disease in the first or incipient stage when the test was made. So that, if it be true that plaintiff was suffering from a dormant disease which, added to the injury, produced or brought about a continuance of the disability, it would not relieve the defendant from payment of the compensation as fixed by the statute. The broken leg of the plaintiff was the immediate and proximate cause of the disability; '
In Behan v. Honor Co., 143 La. 348, 78 South. 589, L. R. A. 1918F, 862, this court said:
“The fact that an employee, injured in performing services' arising out of and incidental to his employment in the course of his employer’s occupation, was already afflicted with a dormant disease that might some day have produced physical disability is no reason why the employee should not be allowed compensation, under the employers’ liability statute, for the injury which, added to the disease, superinduced physical disability.” .
The above was quoted with approval in Fox v. United Chemical & Organic Products Co., 147 La. 866, 86 South. 311; Hicks v. Meridian Lumber Co., 152 La. 976, 94 South. 903.
The plaintiff is entitled to recover compensation as for temporary total disability to do work of any reasonable character, under subsection (a), § 8, of Act 38 of 1918.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, reversed, and set aside, and that plaintiff now have judgment against defendant for the sum of $16 per week not exceeding 300 weeks, beginning with the week ending December 2, 1918, with 5 per cent, per annum interest on the weekly payments from date they are due respectively until paid, less a credit of $144 paid on same.
*542 It is further ordered that the defendant pay all costs of this suit.
Rehearing refused by Division A, compos: ed of O’NIELL, O. J., and ROGERS and BRUNOT, JJ.