NATIONAL STOCKYARDS NAT. BANK *et al. v.* ISAACS.*

(In Banc. Feb. 28, 1927. On Suggestion of Error, April 11, 1927.)

[112 So. 1. No. 25968.]

1. BANKRUPTCY. *Trustee's lien without notice against bankrupt's property is superior to other liens.*

   Lien of trustee in bankruptcy without notice against property of bankrupt is superior to all other liens.

2. BANKRUPTCY. *Evidence held not to sustain finding that named mortgagee was not beneficiary, as required for record to constitute notice defeating lien of mortgagor's trustee (Hemingway's Code, section 2306).*

   Evidence *held* insufficient to sustain chancellor's finding that mortgagee named in the mortgage was not the beneficiary, as contemplated by Hemingway's Code, section 2306 (Code 1906, section 2805), in order that recording of mortgage shall constitute notice sufficient to defeat lien of mortgagor's trustee in bankruptcy against property.

   ETHRIDGE and McGOWEN, JJ., dissenting.

*Corpus Juris-Cyc References: Bankruptcy, 7CJ, p. 135, n. 62 New; p. 274, n. 46 New; Statutes, 36Cyc, p. 1106, n. 29; p. 1110, n. 54; p. 1111, n. 61; p. 1112, n. 72; p. 1183, n. 46; p. 1185, n. 48.

APPEAL from chancery cout of Adams county.

HON. R. W. CUTRER, Chancellor.

Suit by George W. Armstrong against the National Stockyards National Bank and another, wherein B. K.

146 Miss.—24.

Isaacs, as trustee in bankruptcy of George W. Armstrong, intervened. Decree for complainant, and defendants appeal. Reversed and decree rendered.

*Bryan, Stone, Wade & Agerton, G. G. Lyell,* and *Martin & Byrnes,* for appellants.

*What is the proper construction of the words "the beneficiary" in section 2306, Hemingway's Code?* The construction given by the court to this statute was too narrow and restricted. The undisputed evidence in the case shows beyond question that the bank which was named as the beneficiary and payee, always actually paid out every dollar that was loaned George W. Armstrong & Sons, and first received all the notes and mortgages, placed its endorsement on same before parting with any of them.

It was not a fictitious payee and beneficiary; it was a national bank, named as payee and beneficiary, and the bank that actually advanced all the money. The mere fact that on account of the interrelation between the bank and the Cattle Loan Company, which did business in the same banking house and on the same floor, with the same stockholders, officers and directors, that it was customary for the cattle Loan Company to take over by assignment from the bank most of the notes that were executed from time to time and here involved does not prevent the bank from being held to be "the beneficiary" within the meaning of the statute mentioned. Any negotiable instrument, such as these were, the lawmakers knew could be transferred with restricted or unrestricted indorsement by the named beneficiary and payee and it was not sought by the enactment of this statute to prevent such mortgages as are here involved from being recorded. It is a well-known fact that the statute in question was enacted as a revenue measure.

It was obviously the intention of the legislature in the enactment of this statute that the instrument should

name a beneficiary so that with such name as a starting point an inquiry could proceed at the instance of the assessor to determine who was the owner of the solvent credit secured by the instrument so that such owner might be assessed upon the solvent credit, and taxes collected thereon.

Here is no concealment; no covering up of the identity of the beneficiary. Any assessor upon an examination of any of these mortgages, sees that the National Stock Yards National Bank is named as beneficiary. Every requirement of the statute, every purpose in the mind of the legislature in the enactment of the statute, every demand of justice and equity and common sense are here present to satisfy everything except the most narrow, unreasonable and unwarranted construction of this statute.

*L. T. Kennedy,* for appellee.

The statute requiring mortgages to disclose the name of the beneficiary and all assignments to be placed of record is of considerable benefit not only as a revenue measure but to the debtor.

In the case at bar the notes were made payable to the National Bank, the mortgages so recited, and it was accordingly recorded. The National Bank, through its president, both pleaded and stated under oath that it did not make the loans; that the mortgages were not delivered to it; that it was never interested in any of the notes except by way of purchase from the National Cattle Loan Company. The Cattle Loan Company answered by its president and through depositions that it made the loan and was the real owner thereof, though the bank appeared to be the owner thereof, and that it did this because the Cattle Loan Company was not authorized to do business in Mississippi. These statements are admissions and are uncontradicted and the court found that the National Bank named as the beneficiary

in the mortgages was not the beneficiary at the time the mortgages were recorded.

As a matter of law the National Bank could not have made such a loan because it was far beyond ten per cent of its capital stock and, in addition thereto, were loans upon real estate. There is a semblance of pretended evasion by pleading that the National Bank acted as the agent for the Cattle Loan Company in making the loans. However, the record will not support this nor will the law recognize it for the reason that the president of the Cattle Loan Company stated that he so prepared the papers and that it was not then the agency. The National Bank, under the National Banking Act, could not act as agent or broker in making loans. See *Keyser* v. *Hitz,* 31 L. Ed. 156. However, as a matter of law, if the National Bank was acting as agent, it was for an undisclosed principal and our registry acts condemn the recording of a mortgage payable to an agent for an undisclosed principal. Authorities to support our construction of this particular statute are not easy to cite because we do not find that a similar statute has been construed by the courts of other states and this one has not been construed by this court.

"Beneficiary," as used in the statute, means the *cestui que trust.* It means the person or corporation for whose benefit the trustee was created. According to the record the conveyance was to Wirt Wright, trustee, for the use and benefit of the National Bank, beneficiary, but the record discloses that the trust so created in Wright, trustee, was for the National Cattle Loan Company and not the bank as trustee. The bank was never the owner of any of said indebtedness except by purchase and it was not, therefore, the beneficiary of the trusts. *Shirley* v. *Burch,* —— A. S. R. 375.

We submit that this court must of necessity construe the statute in question just as it reads and hold that the deed in trust in the case at bar did not disclose the beneficiary and should not have been recorded, but having

been recorded, it was not notice to any one. This is the sole penalty of the statute.

Argued orally by *G. A. Agerton* and *G. G. Lyell,* for appellants, and L. T. Kennedy, for appellee.

HOLDEN, J., delivered the opinion of the court

This suit is a contest between the appellee, B. K. Isaacs, trustee in bankruptcy, and appellants, who are mortgagees, to determine whether the lien of the trustee upon property of the bankrupt is superior to the lien of the mortgagee in a prior mortgage given upon the property by the bankrupt. The chancellor decided in favor of the lien of the trustee in bankruptcy as against the prior lien of the mortgagee; hence this appeal.

The appellants present several grounds for reversal, but we shall notice only one of them, as the decision of this point will end the case. It is conceded by both sides, which makes it unnecessary for us to discuss the question, that the lien of the trustee, without notice, against the property of the bankrupt, is superior to all other liens; so the simple question to be determined in this case is whether the prior mortgage lien shall prevail over the lien of the trustee against the property, or the proceeds from the sale of it, under the facts of the case.

George W. Armstrong went into bankruptcy and appellee, Isaacs, was appointed trustee. The trustee sold the property of the bankrupt, and holds the proceeds, about forty-four thousand dollars; and this suit in the chancery court of Adams county, where Armstrong owned certain lands and live stock, is to settle the question as to whether or not the trustee shall hold such proceeds for the creditors of the bankrupt, or whether he shall turn them over to Wirt Wright, trustee in the mortgage in favor of the National Stockyards National Bank and the National Cattle Loan Company. A decision of the ques-

tion involves section 2306, Hemingway's Code (section 2805, Code of 1906), which, in part, provides as follows:
  "But the clerk shall not record any mortgage or deed of trust in which the name of the beneficiary is not disclosed therein, and if such instrument is recorded, it shall not impart notice to any one."

In the lower court, the trustee in bankruptcy, Isaacs, contended that his lien against the property of the bankrupt was superior to the prior mortgage lien of appellants, because he acquired the property, as trustee, under the bankruptcy proceedings, without notice of the lien of appellant mortgagees. The prior mortgage held by appellants was duly recorded, as provided by the recordation of laws of this state, but it was contended by the trustee, Isaacs, that the recordation of the mortgage imparted no notice to him because the name of the beneficiary was not disclosed therein as required by the statute, *supra*. The chancellor accepted this view, and decreed accordingly.

The recorded mortgage of appellants disclosed the beneficiary as being the National Stockyards National Bank, and it was urged by the trustee, Isaacs, that this bank was not, in fact, the beneficiary in the mortgage, and offered evidence to establish this fact. The proof relied on by appellee to sustain this contention was very scant, consisting chiefly of certain statements or admissions, in depositions and otherwise, made by Wirt Wright, president of the bank and also of the Cattle Loan Company. He stated that during a number of years these corporations had been making loans to the bankrupt, Armstrong & Sons; that the Cattle Loan Company had been making the loans, while the beneficiary named in the mortgages securing the loans was the National Stockyards National Bank.

This is practically all of the proof in the case which tended to support the finding of fact by the chancellor that the National Stockyards National Bank was not the beneficiary in the mortgages involved in the case. The

chancellor held, however, that the evidence shows that the mortgage involved was properly acknowledged and recorded, as required by law, and the decree in this latter respect is correct.

We have carefully considered the record bearing upon the phase of the case regarding the question as to who was the real beneficiary in the mortgage, and we are convinced that the proof in the record does not sustain the finding of fact by the chancellor that the National Stockyards National Bank was not the beneficiary named in the mortgage, as contemplated by the statute. When the testimony of Wirt Wright, president of the bank, and also of the Cattle Loan Company, is carefully considered, together with the other indisputable proof, it conclusively appears that the National Stockyards National Bank, named as beneficiary in the deed of trust, was the beneficiary, in truth and in fact. The notes executed by Armstrong & Sons and secured by the mortgage were payable to the bank, and the bank paid out its money on these notes, and kept some of the notes, and disposed of others by indorsing them to the Cattle Loan Company, a subsidiary corporation of the bank, doing business in the same building; the stockholders and officers of the two corporations being the same. The bank had an interest in the loan to Armstrong & Sons, since part of the notes were given for its benefit, and were kept by it, while others were turned over to the Cattle Loan Company, which was a subsidiary of the bank. Therefore the bank was interested in the notes, and was a beneficiary, under the law, and was named as such beneficiary in the mortgage, which was recorded as required by law, and such recordation imparted notice to the trustee, Isaacs, and his lien was therefore inferior to that of the mortgagees.

We see no use in discussing the history of the recording statute here in question, and will make no comment thereon, except to say that the manifest purpose of the statute was to compel disclosure of the mortgagee or

beneficiary, so that he might be reached for taxation purposes. Up to the time this act was passed it was common for mortgages to be made payable to bearer, or some fictitious person, and such securities could not be taxed, for the reason that the owner thereof could not be found.; but in the case at bar, the beneficiary was named, because the named bank had an interest in the notes secured by the mortgage, in that the bank retained some of the notes, and assigned others to the Cattle Loan Company, and the fact that the bank took and kept part of the notes was sufficient to constitute the bank the beneficiary within the meaning of the statute.

The amount, about one hundred seven thousand dollars, shown to be due by the bankrupt, Armstrong, to appellant, greatly exceeds forty-four thousand dollars, the amount of the proceeds from the sale of the bankrupt's property now held by the trustee, Isaacs, and therefore the many other questions presented by the record need not be discussed. In view of the conclusions reached, the decree of the lower court is reversed, and judgment entered here for appellant.

Reversed and judgment here for appellant.

.  *Reversed.*

ETHRIDGE, J. (dissenting).

In order to understand my position in this case, it will be necessary to make some additional statements with reference to this case.

This suit originated by George W. Armstrong filing a bill in the chancery court of Adams county, where the mortgage was recorded in favor of the National Stockyards National Bank, in which he charged that the loan made to him was usurious, being in excess of the amount which the said bank was authorized to charge under the federal laws and those of the state of Illinois, where it was domiciled. This bill charged that more than one hundred thousand dollars of the debt claimed was

usurious, and prayed for an accounting, and that the debt be purged of the said usury, among other things.

The national bank filed an answer, in which it denied generally the allegations of the bill, and interrogatories were propounded under the statute of this state by which nonresidents could be compelled to answer them under oath, where a suit in this state was pending. When said questions are answered under oath, as they are required to be, they have the force of a deposition—in fact, they constitute a deposition, and are available to either party. In answering these interrogatories, the national bank, through Mr. Wright, its president, denied specifically that it was a debt of the bank, stated that it was the debt of the National Cattle Loan Company, a corporation under the laws of the state of Delaware, of which Mr. Wright was also president, and disclaimed interest entirely in the controversy.

Thereupon the bill was amended, making the National Cattle Loan Company a defendant, and in the pleadings of the National Cattle Loan Company it denied that the debt belonged to the bank, but it alleged that it was a debt due the Cattle Loan Company, and that the reason it was taken in the name of the bank was that it occurred to the president of the National Cattle Loan Company that he had not filed a copy of its charter with the secretary of state of Mississippi, and that the loan company might be doing business in violation of the laws of Mississippi. It is claimed specifically in the sworn deposition of the bank and in the answer of the National Cattle Loan Company that the bank did not own the debt, or have any interest in it, but that it was taken, merely for convenience, in the name of the bank; that, although the bank did not own any interest in the debt, it would, when it desired to do so, purchase from the National Cattle Loan Company notes secured by mortgages or deeds of trust, but it was under no obligation so to do, and, in fact, that most of the notes were sold to other banks, trust companies, and financial institutions, in the

markets of the North and East, interested in buying such paper.

After the cause reached this state, Armstrong was placed in bankruptcy, a trustee appointed, and the trustee intervened, by permission of the bankrupt court, in the suit to prosecute the litigation for the interest of the bankrupt creditors, and the trustee set up that he stood in the relation of a purchaser without notice, under the statute referred to in the majority opinion, which provided that, in order to record an instrument under the recording act of this state, it was necessary for the name of the beneficiary to be shown therein, and that no deed of trust or mortgage should be recorded unless the beneficiary was disclosed therein, and, if recorded, it should not be notice to any one. When the trustee intervened, and raised this question for the first time, the Cattle Loan Company changed its position and claimed that the bank was also the beneficiary in the deed of trust.

The two corporations are entirely separate entities. The National Cattle Loan Company is a Delaware corporation, and its incorporators are presumed conclusively to be citizens of the state of Delaware. The National Stockyards National Bank is a banking corporation, domiciled in the state of Illinois, and incorporated under federal laws. It is true that most of the officers of the institutions were common, and each had the same manager and president, Mr. Wright, whose deposition was taken in the suit against the National Stockyards National Bank, and who also swore to the answer of the National Cattle Loan Company. There was no showing that any mistake had been made, or that he did not know all the facts at the time he filed the said answers and gave his deposition under oath. In fact, it cannot be presumed that he was unaware of all the facts, because the proceedings were had with him when the notes were made, and the bank was put squarely upon notice by the allegations in the bill, and was called upon to answer the allegations. In addition to its being called upon to plead

to the bill, it was called upon to answer, under oath, the interrogatories propounded to it, and it did so. The only reason for changing its position was to avoid the effect that the statute might have upon the suit. The change made from the sworn statement was not by reason of any mistake discovered, but solely on account of the change of the defendants' interest to the suit.

The majority opinion states that the testimony to show that the National Cattle Loan Company was the real beneficiary is very weak. If the testimony is regarded as weak at all, it must be based upon the conflicting testimony given by the same witness at different times, without any reasonable explanation therefor. The answers were positive and direct, and the whole record shows that the witness knew the facts exactly when he first answered these interrogatories and the bill against the National Cattle Loan Company. The chancellor had the right to pass upon the credibility of the witness and to judge of the reasonableness of the testimony, in the light of the circumstances existing at the time, and had the right to believe that the first deposition related the truth of the matter, and that the answer of the National Cattle Loan Company represented the truth. If there is anything at all that ought to be binding upon the litigant, it is the solemnity of his oath; and courts can refuse to be influenced by different testimony, where it is manifest that the change was made purely to serve the interest of the litigant brought about by a change in the situation. Any litigant who places himself in the position of marching down the "ringing grooves of change," changing his oath with each shifting necessity, and faithful alone to self-interest, ought to receive but little consideration at the hands of the court.

I think it is fundamental that the two corporations are separate entities, and, while there may be subsidiary relationships, the legal rights of the corporations are as separate as those of any two individuals. Under the proof in this record, the loan was clearly made for and

on behalf of the Cattle Loan Company, and the National Stockyards National Bank was in no sense the beneficiary. Consequently the deed of trust placed upon the record, in not disclosing the name of the real beneficiary, was not constructive notice to any one, and had no efficacy in giving notice of the claims to the creditors of the bankrupt, Armstrong.

I therefore am compelled to differ with the holding of the majority.

## IN RESPONSE TO SUGGESTION OF ERROR.

ANDERSON, J.

The particular clause of the statute involved, section 2805, Code of 1906 (section 2306, Hemingway's Code), is highly penal, and therefore must be liberally construed in favor of the mortgagee as against an adversary subsequent lienholder on the mortgaged property. Or, putting it conversely, the statute must be construed strictly against the latter in favor of the former.

The purpose of the statute was to conserve the public revenues. Its object was to facilitate the subjection to taxation of solvent credits secured by mortgages which were subject to taxation under the law. The taking of mortgages to secure notes, without any beneficiary being named in the mortgage, was a common practice in this state before the enactment of the statute. For that reason it was with great difficulty the taxing authorities could ascertain who were the holders of such securities. The record of such mortgages showed nothing that would render any aid for that purpose, except the name of the grantor in the mortgage. Oftentimes the mortgage failed to show whether the indebtedness secured was payable in this state or in another state, and failed to show the rate of interest the indebtedness bore. By the enactment of this statute the legislature thought to aid the taxing officers by setting up a signpost. It required the mortgage to show the beneficiary as a pointer for them,

so that they could go to the beneficiary and ascertain, in the first place, whether the indebtedness secured by the mortgage was subject to taxation under the laws of this state, and, if subject to taxation, who the holder of the indebtedness was at the time taxes became a charge thereon. It would never do for the court to lose sight of the purpose and policy of the statute—the reasons for its enactment. And this is sometimes true, even though the statute be without ambiguity in its language. In construing statutes, the chief aim of the courts should be to reach the real intention of the legislature. A construction which will bring about manifestly unthought-of and unjust results will be avoided, if possible, and, if necessary to avoid such results, the courts will widen or narrow the letter of the statute. *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914 B, 392. In *Queen* v. *Clarence,* L. R. 22 Q. B. Div. 65, it was said by Lord COLERIDGE that:          .

"In such a matter as the construction of a statute, if the apparent logical construction of its language leads to results which it is impossible to believe that those who framed or those who passed the statute contemplated, and from which one's own judgment recoils, there is in my opinion good reason for believing that the construction which leads to such results cannot be the true construction of the statute."

The statute does not provide that the true beneficiary shall be shown in the mortgage, or that the only beneficiary shall be shown. It provides that "the beneficiary" shall be disclosed in the mortgage. The notes involved were payable to the National Stockyards National Bank. The legal title to the notes was therefore in the bank. The evidence showed that the National Cattle Loan Company was a corporation organized under the statutes of the state of Delaware, domiciled and having its principal office in the city of East St. Louis, Ill.; that it occupied the same offices and buildings as the National Stockyards National Bank; that the executive officers of

the bank were the executive officers of the loan company; and that the stockholders of the one were the stockholders of the other.

It is true that the two corporations were separate entities. They were separate artificial persons under the law, but because of the identity of the stock ownership in the two corporations the net profits of each belonged to the stockholders of the other. As stated, the notes were payable to the bank, and the mortgage to secure the notes showed that institution to be the beneficiary. Notwithstanding the money loaned belonged to the loan company, for the space of time between the taking of the notes and the mortgage and the transfer of the same by the bank to the loan company the former owned the legal title to the notes. There was nothing in the evidence which tended to show that the notes and mortgage were so taken in fraud of the statute involved. On the contrary, the evidence tended to show that both the bank and the loan company were in entire ignorance of the statute. We think, under that state of facts, that the bank was such a beneficiary as was contemplated by the statute. Certainly that condition answered the purpose and policy of the statute. The naming of the bank as beneficiary in the mortgage was such a signpost as pointed the way to the taxing authorities of the state to ascertain whether or not the notes were subject to taxation and their ownership. Furthermore, these notes were payable in another state. Ordinarily notes payable to a person in another state are not taxable in this state, regardless of the interest they bear; they are beyond the taxing power of this state; they have no situs here for the purpose of taxation.

If appellee's position be sound, all the beneficiaries in a mortgage, regardless of number, would have to be set out in the mortgage, Take, for illustration: A. has fifty thousand dollars belonging to himself, his wife, and eight children. He wants to lend it out on real estate security. He instructed his attorney to so lend the funds, taking

the notes payable to his attorney, and naming the latter as beneficiary in the mortgages. That course is pursued. He pays his attorney for his services. When called upon, the attorney transfers the notes to A. Under the statute, would it be necessary that such mortgages name A. and all the members of his family as beneficiaries? Would that course be an evasion of the statute? We think not. One argument made by the appellee, and the principal one, why his suggestion of error should be sustained, is that in the opinion handed down the court misconceived and misstated the facts of the case. Whatever misstatement of facts was made in the opinion, if any, was as to facts immaterial and not controlling. We think the controlling facts were sufficiently set out in the opinion, and the reasoning therein was sound. In response to the suggestion of error, we have only undertaken to elaborate the reasoning of the opinion handed down, in the hope of adding to its force, if possible.

*Overruled.*

ETHRIDGE, J. (dissenting).

I am unable to agree with the opinion in response to the suggestion of error. The purpose of the statute, I think, under the rules of construction of statutes, is to be determined from the language of the statute, and when one reads the statute in the present case there is nothing that appears in it to indicate that its sole purpose was to conserve public revenues. The statute is not placed in the chapter on revenues, but in the chapter on land and conveyances, prescribing the duties of the clerk in regard to recordable instruments. Under the registration acts prior to 1906, the section involved dealt entirely with the clerk's duty in regard to the recording and the certifying of recordable papers, and his fees to be charged therefor. In 1906, in the enactment of the

new Code, the following clause was added to the original section:

"But said clerk shall not record any mortgage or deed of trust in which the name of the beneficiary is not disclosed therein, and if such instrument is recorded it shall not impart notice to any one."

This was section 2805 of the Code of 1906. By chapter 196, Laws of 1910, the section was again amended, and now stands and reads as follows:

"The clerk of the chancery court, or his deputy, shall give a receipt for every written instrument delivered to him to be recorded, if demanded, in which he shall state the name of the parties, the date of delivery and quantity of land or other property therein specified, and shall also certify on or under such instrument the hour and minute, the day and month, and the year when he received it; and when the same is recorded, he shall mark thereon the number of the book, and the page on which it is recorded, and an itemized statement of his fees thereof, and shall deliver it to the party entitled to receive it when called for. But the clerk shall not record any mortgage or deed of trust in which the name of the beneficiary is not disclosed therein, and if such instrument is recorded, it shall not impart notice to any one; provided, the failure to disclose the name of the beneficiary shall not apply to mortgages and deeds of trust given by corporations either foreign or domestic, to secure the payment of serial bonds payable to bearer; and the assignment or transfer of such mortgages or deeds of trust or bonds secured by the same need not be entered on the margin of the record. But it shall be the duty of the holder of such securities covered by this proviso to list and assess the same for taxation, if liable for taxation, in the hands of the holder, such list or assessment; to show the amount, date, date due and value of such securities of such corporation so made payable to bearer, and on failure of the holder to so assess the same, all interest thereon, shall be forfeited in his hands and as

against him, and he shall be denied the right to recover such interest in the courts of the state.''

The legislature manifestly intended the amendment, made for the first time in 1906, to operate in such a way as to give any person the benefit that would flow to them from the failure to record the recordable instruments, unless the beneficiary was disclosed. The statute was not limited by the legislature to any one purpose. One of the purposes for which it served, and which may have been the main purpose in influencing the legislature to place the amendment in the statute, was to aid the revenue officers in locating taxable property. But that was by no means the only purpose the statute had. It was also enacted to enable creditors to locate and subject property to their lawful demands. The present suit illustrates the necessity and wisdom of the statute for that purpose. Here is a claim of usurious interest, and an effort to purge the indebtedness, as shown by the record, of such usury. That could only be done by bringing the owner of the indebtedness into court, and, when the ostensible owner was brought into court, such owner promptly disclaimed all interest in the transaction. The real owner, as disclosed by the original answer and by subsequent depositions, undertook to avoid the effect of the bill by showing that the statute against usury did not apply to it.

The other illustration of the wisdom and purpose of the statute would appear by supposing a creditor, who is a nonresident, desires to enforce a judgment against a debtor. The creditor would naturally go to the records to see if such debtor had property, and if his property was in the nature of debts secured to him by instruments recordable, and they appear of record, he could readily find something for the officer to seize under execution. Or, perhaps, a resident of the state might have a claim against a nonresident who had property and effects in the state, or debts due by residents of the state to him, and would desire an attachment to subject such effect

146 Miss.—25.

and debts to his demand. If such debts are recorded properly, an attachment in chancery could be brought, and justice secured, without going into a foreign state for that purpose. This section should be construed with section 2295, Hemingway's Code (section 2794, Code of 1906), which section appears to have been enacted for the first time in 1906, and reads as follows:

"When the indebtedness, or any part thereof, secured by a mortgage, deed of trust, or other lien of record shall be assigned by the person appearing by the record to be the creditor, he shall be required by the assignee to enter the fact of the assignment on the margin of the record of the lien; and in default of making such entry, any satisfaction or cancellation of the lien or instrument evidencing it entered by the original creditor shall release the same as to subsequent creditors and purchasers for value without notice, unless the assignment be by writing duly acknowledged and filed for record; and every assignment by an assignee or any such lien shall be entered in like manner and with like effect in case of failure."

If these two sections are read together, then it will be an easy matter, where a person has such debts secured by recordable instrument, to discover the owner of the debts, and satisfaction can then be secured. Can one investigating titles of persons having deeds of trust recorded, which do not disclose the true beneficiary, discover the real facts in reference to such instruments? Such person, investigating the record, might act to his own injury, and this evil could be avoided by compliance with the present statute. There are many cases in which an unrecorded instrument would not affect creditors and subsequent purchasers for value. It was a wise policy on the part of the legislature to require public records to exhibit the truth. It seems to me that it is too plain for argument that the legislature intended the recorded instrument to disclose the real beneficiary therein; that it did not mean one of several beneficiaries, or an agent

or an attorney of the beneficiary, but it meant to force a disclosure of the true beneficiary; and, if given a natural construction, it would at all times disclose who the real beneficiary was.

We somewhat impaired the efficacy of the legislative purpose and effort to have the record so disclose the true beneficiary and real owner of the indebtedness in decisions construing sections 2295 and 2296, Hemingway's Code (sections 2794 and 2795, Code of 1906). See *Schwratz* v. *Smith,* 134 Miss. 594, 99 So. 436; *Hughes* v. *Kaw Inv. Co.,* 133 Miss. 48, 97 So. 465, 31 A. L. R. 727. If the present construction is correct, the legislature has made a vain attempt to have public records exhibit the truth, and under the present decision, and the others referred to, the usefulness of the legislative program is greatly impaired, if not destroyed.

I think the statement in the opinion of the majority, to the effect that the National Cattle Loan Company and the National Stockyards National Bank were practically the same is wholly fallacious. It is true that the managing officers were the same and the directors may be identical; but the stock may change hands any day, and the real owners of the stock of the two corporations be widely different. The profits of the one corporation would not go to the stockholders of the other corporation. They are entirely separate persons and have no legal relationship. The stockholders of the one corporation would not be liable for the debts and obligations of the other. The corporation does not have to declare dividends even though they are earned. The dividends may be passed to the capital, and the owners of the stock may be wholly unable to use any part of the funds for their personal use. I think that the record shows there is some difference in the actual ownership of the stock of the two corporations, and that there is some difference in the personnel of the directors. Under the law, the stockholders are presumed to be citizens of the state where the corporation is chartered. I fail to see where

there is any harm or practical difficulty in requiring the record to disclose the real beneficiaries.

McGOWEN, J., joins me in this dissent.

COOK, J., concurs in the result reached in this case, but does not agree with the opinion in response to the suggestion of error.