No. 2891

Second Circuit

JACKSON v. YOUNG

(June 2, 1927. Opinion and Decree.)
(July 25, 1927. Rehearing Refused.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant —Par. 154, 156, 157.**

The operation of a gas pipe line is the putting into operation of the gas well, and, therefore, section 1, sub-section 2(a), of Workmen's Compensation Act (Act 20 of 1914), having reference to hazardous occupations applies to the operation of the gas pipe line irrespective of who owns the gas well.

2. **Louisiana Digest—Master and Servant —Par. 156.**

The construction of a gas pipe line from the standpoint of money and work is the major portion of the business of transporting gas. Therefore, the principal engaged in such business is responsible under the Workmen's Compensation Act (Act 20 of 1914), for compensation to the injured employee regardless of whether the work be for it or someone else.

3. **Louisiana Digest—Master and Servant —Par. 159, 159a.**

Injured employee, suing for compensation under the Workmen's Compensation Act (Act 20 of 1914), who had received a simple fracture of one of the bones of the leg which resulted in a stiff ankle joint is entitled to recover 60 per cent of the difference of what he can earn and what he actually earned at the time of the accident, during the period of disability, not exceeding 288 weeks where 12 weeks were allowed for total disability during period of recovery, no allowance being made for reduced earning capacity due to the disease of syphilis.

4. **Louisiana Digest—Master and Servant Par. 154, 160b, 160h.**

Section 33 of Act No. 20 of 1914, the Workmen's Compensation Act, requiring a lump sum settlement by reason of defendant's failure to pay six successive installments as they become due, applies only when such failure occurs after judgment is rendered.

5. **Louisiana Digest—Judgment—Par. 36.**

A judgment cannot be rendered in favor of a defendant and against the warrantor who acknowledged service and waived citation where no preliminary default had been previously entered against the warrantor.

ON MOTION FOR NEW TRIAL

6. **Louisiana Digest—Pleading—Par. 71, 125.**

Where counsel objects to trial of the case on the merits before an exception no cause of action is disposed of, if he does not object to testimony beyond the petition at the trial of the exception and the case on the merits, this evidence will have the effect of enlarging the petition, thus making it necessary to give judgment for plaintiff although the exception no cause of action would have been sustained.

7. **Louisiana Digest—New Trial—Par. 2, 9.**

New trial will not be allowed where judgment is in accordance with the evidence adduced and the law governing the case.

Appealed from the Second Judicial District Court of Louisiana, Parish of Bossier. Hon. T. F. Bell, Judge.

Action by James Jackson against C. C. Young, et al.

There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

Drew & Wallace, of Minden, attorneys for plaintiff, appellee.

F. G. Thatcher, of Shreveport, attorney for defendants, appellants.

Webb, J., recused.

ODOM, J. We find in the record the written opinion of the district judge, in which we concur. We note that the district judge also wrote an opinion on the application for new trial. Both of which we quote in full:

"This suit arises under the compensation law, and in plaintiff's petition it is alleged that plaintiff was employed as a driver of teams for the partnership of Young & Whittington, that said Young & Whittington were working for the Palmer Corporation; that plaintiff while in actual employment of said Young & Whittington and while stringing pipe for said corporation in Bossier parish, was injured while in the course of his employment. Then follows the allegations in regard to the injury and extent of same. Petition was filed on September 5, 1924. On March 18, 1925, plaintiff Palmer Corporation filed an exception of no cause of action and on December 1, 1924, defendant C. C. Young and J. W. Whittington filed an exception of no cause of action. On March 18, 1925, all defendants filed answers, and on the same date, March 18, 1925, the case was tried without either defendants insisting on a decision of the exception of no cause of action. The defendant, Palmer Corporation, now insists on a decision on the exception of no cause of action without going into the merits of the case, the meaning of the exception being that the plaintiff has nowhere alleged any facts which would bring the defendant Palmer Corporation under the compensation law. This is absolutely correct, and if we had to decide the exception only on the allegations of the petition it would necessarily be sustained, but none of the defendants insisted on a decision of the exceptions prior to a hearing on the merits, and we are unable to find in the record in this case anywere any objection made by any of the defendants to an enlargement of the pleadings by the evidence; so at this time we think it is proper to decide this exception not on the petition alone, but on this petition as enlarged by other pleadings and the evidence.

"The defendant Palmer Corporation contends that even under the evidence it is not shown that there is any liability as to the Palmer Corporation, for two reasons, both of which we shall discuss together, they being: first, that there is no allegation or proof that the Palmer Corporation was engaged in a hazardous business, trade or occupation; second, that petitioner was not working for the ·Palmer Corporation, but was working for an independent contractor, and there is no allegations of the answer of the Palmer of a pipe line was a part of the trade, business òr occupation of the Palmer Corporation. The petition merely states that plaintiff was engaged in stringing a pipe but does not show for what purpose that pipe was being strung. The proof shows that the pipe was being hauled and strung along a line that was being constructed for the purpose of transporting gas. The allegedations of the answer of the Palmer Corporation show that defendant Palmer Corporation was engaged in the construction of a gas pipe line from the Webster parish gas field to a connection with a gas pipe line belonging to the Palmer Corporation running from the Elm Grove gas field to Shreveport and north; that the Palmer Corporation neither owned ·nor operated any gas wells in said Webster parish but bought gas in said field and transported same through the said pipe lines. Then the question presented on this phase of the case is, whether or not the Palmer Corporation comes under the terms of the compensation law.

"Section 1, subsection 2, subdivision A, which is the portion of the statute specifying the hazardous occupations, nowhere specifies pipe lines, either gas or oil, and unless this suit falls under, in some way, the cited section of the statute, no recovery can be had. The only part of subdivision A which could possibly cover the present case is as follows:

" 'The operation, construction, repair, removal, maintenance and demolition of * * * oil, gas, sulphur, salt or other wells * * * .'

"The case must be judged by the business of the defendant rather than the particular work the plaintiff was doing at the time he was injured. The Palmer Corporation owned no gas wells, was not drilling any, and unless it can be said that it was engaged in the operation of gas wells, by reason of the fact that it was transporting the output of gas wells, then we do not think it comes under the statute. The only case in the Supreme Court that we think has any material bearing on this question is that of Durrett vs. Woods, 155 La. 533. In that case, Woods was the hauling contractor and Durrett was working for him. Woods was doing a general hauling business in the oil fields, hauling pipe, machinery, derrick timbers, etc. He had no direct connection himself with the drilling of wells, but merely was an independent contractor hauling the material that went into the drilling of such wells. The court stated:

" 'The defendant had nothing to do with the drilling of an oil or gas well, nor with the construction, erection, maintenance, repair, operation, or demolition of oil or gas wells, nor with the placing or laying of pipe, with the erection of the derricks; but his business did include the hauling of logs, timber and lumber, and drill rigs, and the placing of same on the ground, and the hauling of machinery and appliances to be used in connection with the erection and operation of oil and gas wells, and that was his exclusive business in the oil fields. It goes without saying that no oil or gas well could be constructed and operated without the logs and timbers for the derricks and without the machinery and other appliances. Therefore the furnishing of same and the placing of same upon the location for the well was to all intent and purpose the initiation, the beginning, and a part of the construction and erection and putting in operation of an oil well within the meaning of the statute.'

"To use the same wording practically as the court above used, that is:

" 'It goes without saying that no gas well could be operated as a commercial proposition without a gas pipe line connecting that well to the point of delivery of the gas.'

"a gas well without a pipe line cannot be operated as a commercial well, for without such pipe line that well must

either lay dormant or blow its gas into the open air; we therefore think that the operation of a gas pipe line is the putting in operation a gas well and it comes under the statute irrespective of who owns the gas well.

"It is true, in the case of Durrett vs. Woods, 155 La. 533, 99 South. 430, the court did not limit its reasons to those we have quoted, and it may be said that the quoted portion of that case is some-, what obiter; but the court did give such reasons as one of the bases for its judgment.

"In the case of Jones vs. Louisiana Oil Refining Corporation, Court of Appeals pamphlet No. 6, page 88 (3 La. App. 85) that court cited the case of Durrett vs. Woods as its authority for its judgment.

"We have had numerous cases under the compensation law against pipe line companies. For instance, the Standard Pipe Line Company and the Shreveport Eldorado Pipe Line Company, neither of which owned any oil wells, and in none of those cases has there been any contention but that they fall under the operation of the compensation law. It remained for ingenious counsel in this case to raise the point, but as we think that the transportating of gas through pipe lines is a necessary part of the operation of gas wells, that such business comes under the statute.

"The plaintiff in this case was not working for the Palmer Corporation. The Palmer Corporation employed the Pine Island Teaming Company as an independent contractor to haul and string the pipe in question. The Pine Island Teaming Company sublet portions of the work to other parties; the plaintiff was driving for either the partnership of Young & Whittington or for C. C. Young, and the additional question remains as to whether the Palmer Corporation is responsible under the statute.

"In the case of Shipp vs. Bordelon, 152 La. page 795, 94 South. 399, it was said:

"'Hence we see that is not enough that the employee shall be performing work of the character falling within the designated trades, businesses, or occupations, but it must be done "in the course of the employer's trade," etc., in certain

trades, businesses, etc. In other words, the work must be of that character, and the employer must be engaged in that line of work as a trade, business or occupation, in order that the act may apply. It is not pretended that the defendant was engaged, as a trade, business or occupation, in the building, repairing, etc., of houses or other structures; but merely found it necessary to repair a certain building on his farm. If it be said that he was engaged in farming as an occupation, and the work was being performed in connection therewith, or was an incident thereto, then reference to the statute discloses that agriculture or farming is not one of the occupations specifically named as hazardous or that it is in its nature hazardous.

"'We agree with counsel that it is not required, under our law, that the business of the employer must be exclusive, for one may have a dozen trades, businesses or occupations; but to become liable for compensation he must be actually so engaged, as a trade, etc., and it is not enough that the work done should be hazardous if it be not also incident to or in the course of the trade, business or occupation of the employer which is within itself hazardous under the statute.'

"If the construction of the pipe line was merely an incident to the transportation of gas, then it cannot be said that the Palmer Corporation was undertaking 'to execute any work which is a part of his trade, business or occupation.'

"It is admitted in the answer that the Palmer Corporation was engaged in the erection of a gas pipe line to be used for the purpose of transporting gas. In order to hold the prinicpal responsible it is not necessary that such principal be engaged in some particular business for other people, but if the principal is engaged in such work as part of its trade, business or occupation, whether it be for itself or some one else, it is responsible.

"We do not think that it can be said that the construction of a pipe line is merely an incident to the business of transporting gas. The construction of such a line from the standpoint of

money and work is the major portion of such a business.

"The only case in the Supreme Court involving this phase of the question is that of Helton vs. Tall Timber Lumber Co. 148 La. 180, 86 South. 729, in which the court stated:

" 'The plaintiff sues under the Workmen's Compensation Act for the death of her husband, who was killed by a falling branch while he and other men were at work clearing a right of way for a railroad to be constructed by defendant company. Though plaintiff's husband's contract was with an independent contractor who had charge of this clearing, the defendant company is liable (under section 6 of said act) if plaintiff's husband was an employee, and not, as contended by defendant, an independant contractor.'

"There is very little discussion in that case, but the facts showed that the lumber company had undertaken to build a railroad, and let out a part of the work to another. Contrasting that case with the present case, the building of a railroad by a lumber company was not near as large a portion of its major work as is the building of a pipe line by a pipe line company. If the Palmer Corporation had not been engaged in the construction of the line itself, then the situation would be different; but we think that the evidence and pleadings taken together in this case are sufficient to show that the Palmer Corporation was engaged in the construction of the pipe line as a part of its trade, business and occupation, and is therefore responsible under the statute for injury to an employee of an independent contractor.

"The next question to be determined is whether or not the plaintiff was working for C. C. Young or for the partnership composed of J. W. Whittington and C. C. Young. Without discussing the evidence on this point, to our minds it is plain that no such partnership existed, but that plaintiff was working for C. C. Young.

"The next question is the amount of recovery. Plaintiff received a simple fracture of one of the bones of the leg, some four to six inches above the knee joint, which fracture, at the time of the trial, had entirely healed and was causing him no trouble whatever, but at the time of the trial, which was more than a year after the date of the accident, plaintiff was suffering from a stiff ankle joint. Likewise from a general debilitated condition. The general debilitated condition, we think, was plainly brought about by syphilis. We further think from the evidence taken as a whole that he would, at the time of the trial, have been suffering from the effects of syphilis even if he had never received the injury. The stiff joint from which he was suffering, even at the time of the trial, is a result of the accident. The evidence shows that such stiffness, or loss of flexion, practically always follows a fractured bone even where the injury was not to the ankle joint itself, but in the normal person this joint stiffness would have disappeared in practically twelve weeks. The stiffness in the ankle joint was caused by the fracture and not by syphilis, but the stiffness has been aggravated and prolonged by his syphilitic condition. We therefore think that under the jurisprudence in this state the employer is responsible for the disability in the ankle joint, but is not responsible for his general weakened condition brought about by syphilis, a condition which would have existed irrespective of the accident. He is entitled to recover for full disability during the period of twelve weeks, at the end of which time he would have been able to do some work in spite of the stiff ankle joint if it had not been for his general weakened condition brought about by his syphilitic condition. After that time he is entitled to recover for a percentage of the difference in wages between what he was earning at the time of the accident and what he could have earned irrespective of his generally weakened condition.

"He could work with the stiff joint, but could not make as much money as he could have made if he did not have the stiff joint. His generally weakened condition prevented him from working steadily from day to day, and we think that the evidence shows that he could have earned $1.50 a day, taking into consideration his stiff ankle and

leaving out of consideration his gener- ally weakened condition. This brings us to the question of the amount of wages he was receiving at the time of the accident. For some time prior to the accident he had been driving a team for the same employer in the oil fields of Arkansas, and had been receiving the sum of $3.50 per day. Just prior to the accident, a few days, these teams left the state of Arkansas and came to Louisiana and the employer' put them to work hauling pipe as heretofor set forth. Plaintiff had not made a pay day since coming to Louisiana, and he testified that he had not received any notice from his employer of a cut in wages from the amount he had been receiving in Arkansas. Mr. Young, the employer, testified that he told all of his drivers just prior to moving to Louisiana, that if they came to Louisiana their wages would be $2.50 per day instead of $3.50 per day. Mr. Young did not testify that he specially directed this notice to the plaintiff, but directed it to all of the drivers, and that plaintiff was in the crowd at the time and that as a matter of fact he actually paid the other drivers only $2.50 per day for their work after they came to Louisiana. Under this state of facts we cannot see that plaintiff has shown that he was receiving $3.50 per day in the state of Louisiana, and as it was admitted that he was receiving $2.50 per day we must use this as a basis of recovery. The difference between his wages prior to the accident and what he could have earned after the accident was $1.00 per day or $6.00 per week. Under the compensation law as it existed prior to 124 he is entitled to recover sixty (60) per cent. of the difference. Under section 8, subsection C, this plaintiff is entitled to recover the sum of $3.60 per week during disability for a period not exceeding 288 weeks. and likewise entitled to recover the sum of $15.00 per week for a period of 12 weeks, total disability.

"Plaintiff asked that he be paid in a lump sum by reason of the defendant's failure to pay the six successive installments as they became due. This is evidently based on section 33 of the act, but under this section the failure to so pay applies only when such failure occurs after a judgment rendered.

"Defendant Palmer Corporation asked for a judgment in warranty against the Pine Island Teaming Company and L. W. Boynton and Ike Muslow, composing the partnership of the Pine Island Teaming Company, and likewise against the said Whittington and the said Young. Under the order granted, only L. W. Boynton and Ike Muslow were cited, but as Young and Whittington were already parties defendant, we do not think there was any necessity for citation as to them. As to the Pine Island Teaming Company, service was acknowledged and citation waived by L. W. Boynton, defendant Palmer Corporation thus using the ordinary process of service and citation. Having done this, a preliminary default was necessary in order to take judgment against them. No preliminary default has ever been entered according to the minutes in this case and therefore no judgment can be rendered in favor of the Palmer Corporation and against the Pine Island Teaming Company.

"For the foregoing reasons, the law and the evidence being in favor of the plaintiff, and against the defendants, it is ordered, adjudged and decreed that James Jackson do have judgment against C. C. Young and Palmer Corporation in solido for compensation at the rate of $15.00 per week for a period of twelve weeks with legal interest on each weekly payment, from September 24, 1923, and weekly thereafter, and further compensation at the rate of $3.60 per week during disability, not to excess 288 weeks, with legal interest thereon from the date due of each payment. It is further ordered, adjudged and decreed that defendant Palmer Corporation do have like judgment over and against C. C. Young, reserving its right against the Pine Island Teaming Company and Ike Muslow and L. W. Boynton.

"It is further ordered, adjudged and decreed that defendants C. C. Young and the Palmer Corporation pay all costs of this suit. Done, read and signed in open court on this, the 19th day of June, 1926.

(Signed) "T. F. BELL,

"Judge."

### ON MOTION FOR NEW TRIAL FILED BY DEFENDANT PALMER CORPORATION

"Defendant Palmer Corporation pitches its motion for a new trial on two points: first, that the court erred in overruling the exception of no cause of action, and, second, that the court erred in holding the Palmer Corporation responsible on the facts of this case.

"Taking these up in order:

"Counsel for defendant Palmer Corporation strenuously contends that the court erred in holding as follows:

" 'The defendants Palmer Corporation now insist on a decision on the exception of no cause of action without going into the merits of the case, the meaning of the exception being that the plaintiff has nowhere alleged any facts which would bring the defendant Palmer Corporation under the compensation law. This is absolutely correct, and if we had to decide the exception only on the allegations of the petition it would necessarily be sustained, but one of the defendants insisted on a decision of the exceptions prior to a hearing on the merits, and we are unable to find in the record in this case anywhere any objection made by any of the defendants to an enlargement of the pleadings by the evidence, so at this time we think that it is proper to decide this exception not on the petition alone, but on this petition as enlarged by other pleadings and the evidence.'

"It may be possible that the court did err in considering the allegations of the answer along with the allegations of the petition, but if we had the right to consider the evidence unobjected to, together with the allegations of the petition, we think the same result is obtained.

"Counsel seems to think that the court held that defendants waived its rights under the exception of no cause of action by going to trial without insisting on a decision on such exception prior to the hearing on the merits, but we had no intention of making such a ruling, and do not think that we did make such a ruling. If such had been our intention we would have refused to have considered the exception of no cause of action at all, and the opinion in this case shows that we did consider it.

"If it be true, as contended by counsel for defendant, that the exception of no cause of action must be considered on the allegations of the petition alone, and that court cannot consider the evidence in the case as enlarging such a pleading, then the exception should be sustained.

"Counsel has cited numerous authorities along this line, some of which hold such a doctrine, but all of them are prior to the case of Bell vs. Globe Lumber Company, 17 La. 725, 31 South. 994. Counsel for defendant has very sharply criticised the doctrine announced in the Globe Lumber Company case, and states that it stands alone, and is contrary to the entire jurisprudence of the state from early days to the present time. It is true that it is contrary to some of the jurisprudence of this state prior to the time it was decided, but we know of no case in which it has been overruled, either expressly or impliedly. The cases of Bijou Company vs. Lehmann, 118 La. 956, 43 South. 632; South Louisiana Land Company vs. Riggs Cypress Company, 119 La. 193, 43 South. 1003; State ex rel Barthe vs. Mayor of New Orleans, 130 La. 195 (all three cases are all that are cited by counsel for defendant decided since they decided the Globe Lumber Company case) so far as we can see has not overruled in any way the doctrine announced in the Globe Lumber Company case.

"Whatever we may personally think of the doctrine announced in the Globe Lumber Company case, it is the law so far as this court is concerned, and we do not feel that we have the power to overrule any decision of the Supreme Court.

"On the trial of the case, counsel made no objection to any testimony as being ultra petitionem, and when counsel for defendant was offering his own testimony he made no reservation whatever, and if we are to give any weight to the doctrine announced in the Globe Lumber Company case, we think the exception of no cause of action must be decided upon the petition as enlarged by the evidence without objection or reservation. So if defendant Palmer Corporation is liable at all, we think the exception of no cause of action was properly overruled.

"Coming to the second point raised in the motion for new trial, we held the Palmer Corporation liable under the doctrine announced in the case of Durrett vs. Woods, 155 La. 533, 99 South. 430. Counsel for defendant Palmer Corporation has very strenuously argued that this decision has no bearing upon the present case and is very easily distinguished from the present case. We gave our idea along this line in our original opinion, and no good purpose can be served by rehashing what was there said. We merely disagree with counsel and do think that this is governed by the Durrett case.

"For the foregoing reasons, the motion for new trial filed by the Palmer Corporation is overruled.

(Signed) "T. F. BELL,
"Judge."