(96 South. 665)

No. 25224.

## TAGLIALAVORE v. CAERNARVON DRAINAGE DIST. et al.

(April 30, 1923.)

*(Syllabus by Editorial Staff.)*

1. Pleading ⬤═427 — Admission of evidence without objection held to enlarge the pleadings.

Where evidence as to cause of breaking of temporary dam of drainage district was offered and received without objection, to the extent that it contradicted the pleadings, it corrected and enlarged them and was binding upon all parties.

2. Drains ⬤═57—Evidence held insufficient to support damages awarded for breaking of dam.

In action for damages to land flooded by breaking of temporary dam of drainage district, evidence *held* insufficient to sustain the

judgment for $3,000 and to show that $1,000 would be sufficient.

Appeal from Twenty-Ninth Judicial District Court, Parish of Plaquemines; Leander H. Perez, Judge.

Action by Gaetano Taglialavore against the Caernarvon Drainage District and others. From a judgment for plaintiff, defendants appeal. Amended and affirmed.

John Dymond, Jr., A. Giffen Levy, and R. J. Weinmann, all of New Orleans, for appellants.

Wm. Winans Wall and Charles Schneidau, both of New Orleans, for appellee.

ROGERS, J. This is an action for damages instituted by plaintiff, a truck farmer, living within the limits of the Caernarvon drainage district, in the parish of Plaquemines, for the destruction of his crops as the result of an inundation of his farm lands alleged to be due to the negligence of the defendants, the Caernarvon drainage district and the Phillips Land Company. The American Surety Company of New York is joined as codefendant under its obligation as surety for the Phillips Land Company.

Numerous exceptions, which were overruled, were filed by the various defendants. Upon the trial of the case on its merits, judgment was rendered in favor of plaintiff and against defendants in solido in the sum of $3,000. All of the defendants have appealed.

An examination of the exceptions shows that they were not well taken, and that the action of the trial judge in so holding was correct. Counsel for defendants apparently acquiesce in this view, since they are not insisting upon these pleas before this court.

It appears that during the fall of 1918 the Phillips Land Company, under a contract entered into with the Caernarvon drainage district, with the American Surety Company of New York as surety, was engaged in excavating canals and building levees in said district

for the purpose of completing the drainage system thereof and to protect the lands and crops grown thereon. Under this contract the drainage district retained full supervision and control of the contractor in the operation of its work, with the right reserved to said contractee to employ additional forces or to sublet any part of the work whenever its engineer in charge, or its board of directors, should determine that said contractor was not fulfilling its contractual obligations.

During the progress of the work, it became necessary for the contractor to remove one of the dredges from the outside of the levee district to the inside of said district and in effecting this purpose a temporary levee was constructed around the dredge, after which the permanent levee was cut. About 8 months thereafter the waters of the rising tides, resting against said levees, flowed over this temporary dam, the top of which was some four feet below the top of the permanent levee, until, after several abortive attempts had been made to close the gap formed by the water flowing over the top thereof, the temporary levee gave way, and the water, pouring through from the back sections, together with the heavy rainfall occurring a few days prior, as well as subsequent, to the crevasse, caused the area within the drainage district, including the land occupied and farmed by plaintiff, to become submerged to a depth of several feet for a period of more than 90 days and damaging all of the growing crops within said district.

[1] It is contended on behalf of defendants that, inasmuch as plaintiff was in error in setting forth in his petition that the negligence complained of was committed by the breaking of the dam, which had just been constructed, in an attempt, improperly and carelessly made, to remove the dredge from the inside to the outside of the levee district, there is a fatal variance between these allegations and the true facts as developed by the evidence. It suffices to say, in answer to this contention, that the evidence was offered and received without opposition or objection, and therefore to the extent that it may be contradictory of the pleadings its effect is to correct and enlarge same, and it is binding upon all parties to the suit.

It is further contended on behalf of defendants that no liability attaches to them for the damages suffered by plaintiff, for the reason that the break in the temporary dam was caused by weakness superinduced by excessive tides and unprecedented rains, and that the damage to plaintiff's crops was actually due to the presence on his land of water from the rainfall, and not to the water flowing through the opening in the levee, which water could not be pumped out (the only way in which it could be removed) on account of the complete breakdown of the drainage machinery without any fault on their part.

It is true that the drainage machinery, worked day and night, broke down in the attempt to remove the accumulation of water from the crevasse and heavy rains, but it would seem to be equally true that, if the machinery had been required to respond only to the normal demand of removing the rainwater, and had not had imposed upon it the additional burden of taking care of the crevasse water, it would have functioned properly and adequately, without succumbing to the unusual strain to which it was subjected.

We are satisfied, from our examination of the record, that the damages suffered by plaintiff were caused by the negligence of defendant Phillips Land Company in not exercising proper care in the construction of the temporary dam and in not protecting the cut made by it in the permanent levee in order to permit the passage of its dredge; and by the defendant Caernarvon drainage district in not properly supervising the construction of the dam, and in not requiring its defects to be corrected, under its contract with its

said codefendant, and further, under its obligation and duty of protecting the land and crops of plaintiff within said district.

[2] It is our conclusion, however, that the amount of the damages claimed by plaintiff and awarded by the district court is excessive. The testimony of the plaintiff himself as to the nature and amount of the loss suffered by him is somewhat uncertain and rather confusing. There is a discrepancy in his claims concerning the value of the crops alleged to have been destroyed. In the petition the value of the lost crops is set at $3,000; in his testimony plaintiff declares the value to be $4,300; and in the statement furnished by him to his counsel, when he first placed in their hands his claim for the loss which he had suffered, the value is placed at $4,000. Furthermore on direct examination, plaintiff declared his loss on cabbages and on sweet potatoes was $1,000 for each crop. On cross-examination, however he stated that his loss on the former was $1,400, and on the latter $1,500. The same ambiguity is exhibited in his testimony concerning the other items of alleged loss. He is also uncertain as to the acreage involved, testifying in one place that it was 19 acres and in another that it was 25 acres. The witness likewise swore that his crops were a total loss, but his son, Tony Tagliavore, called as a witness in his behalf, and who had assisted him in his farming operations, testified that he lost only one-half of his crops, except in the case of the sweet potatoes, where the loss was one-third of a square (2 acres), there being two squares or 4 acres, planted in sweet potatoes.

In his suit plaintiff is claiming according to his estimate of what his gross receipts would have been from the sale of all of the truck which he was raising. There is no assurance, however, as to what these receipts would have been. All of plaintiff's crops were in the ground, although some of the truck was in a more advanced state of growth

than the others, and it is by no means certain that all of the crops would have matured and become marketable. Nor does plaintiff make any allowance for the expense of cultivating, gathering, and marketing the crops. There is some evidence as to loss and values given by Tony Tagliavore, a son of the plaintiff, the witness hereinbefore referred to, and also some evidence as to values given by Robert Serpas, when called as a witness for defendants, which is the most satisfactory testimony adduced upon that point. However, after due consideration of all of the testimony in the case, without going into its details, and in view of the admission by counsel for defendants, in oral argument and in brief, while denying liability therefor, that $1,000 would be a fair measure of plaintiff's damages, we have concluded that an award of that amount would do justice between the parties.

For the reasons assigned, the judgment herein appealed from is amended by reducing the amount awarded plaintiff from $3,000 to $1,000, and, as thus amended, the said judgment is affirmed; costs of appeal to be paid by plaintiff.