## KEHOE v. CENTRAL PARK AMUSEMENT CO.
### No. 4390.

Circuit Court of Appeals, Third Circuit.
Feb. 16, 1931.

Rehearing Denied Nov. 11, 1931.

Geo. M. Henry, of Philadelphia, Pa., and Frank P. McCluskey, of Easton, Pa., for appellant.

Layton M. Schoch and Edwin C. Markel, both of Philadelphia, Pa., for appellee.

Before DAVIS, Circuit Judge, and THOMSON and WATSON, District Judges.

THOMSON, District Judge.

The defendant conducted an amusement park, and among other devices was what was known as a "Sleigh Ride." This consisted of small cars, seating two persons, drawn to the top of a trestle by a chain, and allowed to coast down a steep grade by gravity. Usually, a man was stationed at the top of the incline to regulate the distance between the cars before starting down the grade, and at the foot of the hill was a brake operated by hand for checking the speed of the car. This consisted of boards, so placed that by the operation of a lever they would press against the sides of the car as it entered the chute. The speed of the car was thus checked to such an extent that it could then pass safely a distance of about six feet, make a right angle turn, with the aid of another attendant, and, after going a short distance farther, a second brake stopped the car for passengers to alight.

The plaintiff, seventeen years of age, was one of two passengers in a car, two of his companions being in a car immediately preceding, and two in a car immediately following, his car. On the first trip around, it appears that there was a man at the top of the incline and two at the bottom, one at the first brake at the foot of the incline, the other being there to push the car around the corner, after the speed was checked, and then stop the car with a second brake. It is the position of the plaintiff that the first car had passed down and was successfully stopped; when the car of the plaintiff was speeding down the grade, there was no one to operate the first brake, as that party was in the act of pushing the first car around the bend. The speed of the car being unchecked, it passed through the first brake, struck the right

angle turn at full speed, with the result that the plaintiff and his companion were thrown out, resulting in the injury of which the plaintiff complains. The disputed questions of fact necessarily carried the case to the jury; the question being whether the plaintiff's injury was due to defendant's negligence. If so, he was entitled to recover, unless by his own negligence he contributed to the injury. The primary question was, What was the measure of duty which the law imposed on the defendant, in which also is involved the question of the burden of proof? The park, being operated in Pennsylvania, is governed by the law of this state. It can be fairly said that it is the clear duty of those operating a public amusement park to so operate their various devices as to protect its patrons from injury. The Pennsylvania rule seems to be well settled, whatever may be the law elsewhere, that, where an injury occurs to a patron, because of defects in the amusement device, or the means of operating it, the burden is on the defendant to prove its freedom from fault. The defendant, in operating the device here, even if not technically a common carrier, was still subject to the rule that, where the thing that causes the injury is under its exclusive control and management, and the accident is such that in the ordinary course of experience it would not have happened, if proper care had been used, an inference of negligence arises, and the burden is on the defendant to exonerate itself from fault.

Numerous cases establish this doctrine, among others, Durning v. Hyman, 286 Pa. 376, 133 A. 568, 53 A. L. R. 851. In that case, a seat occupied by the plaintiff in a moving picture show gave way, injuring the plaintiff. The Supreme Court reversed the nonsuit which was entered, holding that the proprietor impliedly warranted that the premises were safe for the purpose, and the burden was on him to show his freedom from fault.

In Fox v. Philadelphia, 208 Pa. 127, 57 A. 356, 65 L. R. A. 214, and McKnight v. Kresge, 285 Pa. 489, 132 A. 575, the same principle is applied to the operator of an elevator as to the duty owed to a passenger. In Petrie v. Kaufmann & Baer Co., 291 Pa. 211, 139 A. 878, the rule was applied to one operating an escalator, where a passenger was injured through some defect of mechanism or the manner of its operation. The court there held that, while a carrier is not an insurer of the safety of the passengers, he is bound to exercise the highest practical degree of care for their safety; and, where an injury occurred through some defect in the means of transportation or the manner of operation, the burden is upon the carrier to show that it could not have been prevented by human foresight.

The very nature of this device, which sent cars down a steep grade, at a high rate of speed, in whose path at the bottom was a right angle curve, necessarily required one or more brakes to check the speed of the car and operators properly stationed to apply the brakes, or an accident would naturally follow from the uncontrolled momentum of the car. The company recognized this necessity by placing brakes to check the speed and men to operate them. Over the device, as constructed, and its method of operation, the passengers had no control whatever.

It is not necessary for the plaintiff to call for the application of the doctrine of res ipsa loquitur in this case. If the brake was not applied to check the speed as the car approached the right-angle bend, this raised a presumption of negligence—rather it was clear negligence itself. The court was correct at the very beginning of the charge, when it said, referring to the business in which the defendant was engaged: "For that they received a compensation, and out of that situation arises a duty on their part, which is to exercise a high degree of care in providing efficient instrumentalities in good condition, and maintain them in good condition, and to operate them with a degree of care. That care may be referred to as something more than ordinary care. There is a higher degree of care than ordinary care. It is a care commensurate with the circumstances, and another circumstance is that they invite people to take rides on that car, and by that impliedly hold out that they can do it with safety."

But a careful reading of the whole charge forces us to the conclusion that the instructions were inadequate for the following reasons: In speaking later in his charge on the question of negligence, the learned judge said: "The law plays no favorite. It hands out the same measure of justice to one as to another, plaintiffs and defendants alike, and the same degree of care which is required of one party is required of the other, and that is, again re-

verting to the definition which I gave you, due care under all the circumstances."

This was misleading, in view of the imperative duty of high care legally resting on the defendant. In another part of the charge, the court said: "I am not altogether sure that I understand the theory upon which, and in the acceptance of which, you would find a verdict against the defendant or in favor of the plaintiff." The theory of the plaintiff was plain. It was that failure of the defendant to check the speed of the car because of the absence and default of the operator of the brake was the negligence which directly caused the accident to the plaintiff.

Again the court emphasized the inherent rights and dangers incident to the speed which the cars were intended to travel. This tended to mislead, because there is no complaint against excessive speed or anything in the case raising the question of the assumption of risk. Finally, and more particularly, no answer was made by the court to the plaintiff's request for charge, as contained in his following point:

"The owner of a place of public entertainment is bound to use the utmost degree of diligence and care to keep the premises safe for public use, and patrons have a right to assume he has performed this duty; and when a person is injured by reason of some defect in the means of transportation or in the manner of operation the burden is on the owner to show it could not have been prevented by human foresight."

Under the Pennsylvania authorities, this should have been affirmed, as the same idea embodied therein has been expressed by the courts in varying forms of words in a line of cases. Instead of affirming or qualifying it, the court did not answer it. He said: "I ought to add that the points submitted I have covered in the general charge, and so far as they are affirmed in the general charge, the points are affirmed, and so far as they are qualified or negatived, they are qualified or negatived, and an exception is allowed accordingly."

The charge did not anywhere cover the point upon which the court was specifically asked to speak, and thus the point most vital in the decision of the case was not answered at all.

For these reasons, the judgment must be reversed.