SISTRUNK et ux. v. AUDUBON PARK NATATORIUM, Inc.

No. 15025.

Court of Appeal of Louisiana. Orleans.
Dec. 16, 1935.

668

A. Sidney Burns, of Lake Charles, and Legier, McEnerny & Waguespack, of New Orleans, for appellants.

Deutsch & Kerrigan & Burke, of New Orleans, for appellee.

JANVIER, Judge.

On June 19, 1933, William T. Sistrunk, the ten year old son of Mr. and Mrs. Joseph S. Sistrunk, fell from the elevated platform of an amusement device known as a "shoot-the-chute," located at the Audubon Park Natatorium, or outdoor swimming pool in New Orleans. He fell to the concrete pavement below the elevated end of the device and sustained injuries consisting, principally, in the loss of several of his permanent, or adult teeth, and one of his first, or "baby" teeth.

The said natatorium or swimming pool, though located in Audubon Park, is not operated by the park commission, but is leased to a private corporation known as Audubon Park Natatorium, Inc., which operates it for profit.

Alleging that the fall resulted from the fact that the said device is not so constructed as to safeguard children against such accidents, and that, therefore, defendant corporation is liable for the injuries and losses sustained, Mr. Sistrunk prays for judgment in his own behalf for $150, averring that to be the amount of a dental bill for which he has been rendered liable, and Mr. and Mrs. Sistrunk, on behalf of their minor son, seek judgment for his use and benefit in the sum of $10,000.

In the petition, plaintiffs describe the device known as the "Shoot-the-chute," with the general appearance of which all persons are more or less familiar, and they aver that "there should be some safeguard at the top of the chutes which would prevent accidents." They also allege that there is a perforated iron pipe extending across the top of the surface of the slide, just below the point at which it is connected to the platform, and they charge that it is negligence to permit such a pipe to be so located where it may trip persons attempting to place their feet on the slide in attempting to make use of it. It

is further charged that "it was gross negligence and carelessness on the part of the defendant corporation not to place, especially at the top of the incline, wooden or metal slides against the incline, which would have permitted any small child to safely seat himself * * * before beginning the descent * * * into the pool."

There is another charge of negligence which does not appear in the petition, but which counsel for plaintiffs contend may be availed of because, so they maintain, the evidence on which it is based was permitted to be introduced without objection by counsel for the defendant. This charge is that the platform from which the boy fell was constructed of wood and was not covered with a rubber, or cocoa, or other mat to prevent persons from slipping. We shall discuss hereafter the question of whether this allegation of negligence may be considered in view of the present condition of the pleadings and of the evidence.

Defendant maintains that it was not negligent in any of the particulars mentioned. It contends that the device in question was purchased from a leading manufacturer of such devices and that it was equipped with all usual appliances, rails, and guards, and that there were no defects of any kind therein, and it contends, also, that the accident would not have occurred had it not been for the carelessness of the boy himself.

There was judgment for defendant, and plaintiff has appealed.

According to the testimony of the boy, as he was about to take his position in the upper end of the slide, one of his feet struck something which he believes was the perforated pipe to which we have referred. He states that as a result he stumbled, and, while attempting to catch himself on one of the guard rails surrounding the platform, he swung off the platform, and, after hanging for a moment by one hand, could sustain himself no longer, released his hold, and fell to the pavement below. The pipe in question is necessary to the operation of the device, since it appears that from this pipe water is sprinkled on the upper surface of the slide in order to make it slippery. The pipe is not on the platform, but is on the slide, and there is no reason for the feet of any one using the slide to come into contact with it except through careless-

669

ness. It is obvious to every one and, in fact, is made use of as a starting point upon which most persons sit just before releasing their hold on the rails and commencing the descent of the slide.

The record shows that across the top of the slide and a few feet elevated above it is a cross-rod, under which every one using the device must pass, and that this rod is placed there so that persons may cling to it with their hands extended above their heads and thus take their seats in the end of the chute. There are two other iron rails, one on each side of the upper end of the shoot, which serve as a guide, so that any one sitting in the chute must start the descent between these two guides. They are placed about 18 inches, or 2 feet above the sides of the chute, and are attached to posts on the upper end of the slide and each extends a few feet down, parallel with the guide rails of the slide and 18 inches to 2 feet above these rails. The entire platform, except at the stairs and at the entrance to the slide, is surrounded by iron rails, the upper one about 3 or 3½ feet elevated above the platform, and the lower one about 18 inches or 2 feet above it. With such construction as is testified to, and, as is evidenced by the photographs, there was no reason for any one to anticipate that there was danger of such an occurrence as the boy testified took place on this occasion.

Such devices obviously cannot be absolutely "fool-proof." Persons who own or operate them are not the insurers of the safety of their patrons. In volume 26, Ruling Case Law, at page 714, appears the following: " * * * It is the well settled general rule that the proprietor of a place of amusement is not an insurer of the safety of his patrons, nor is his undertaking so similar to that of a common carrier of passengers as to call for the application of the same rule of responsibility. He is bound to exercise only the degree of care that would be expected of an ordinarily careful and prudent person in his position, and his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place."

In Godfrey v. Connecticut Co., 98 Conn. 63, 118 A. 446, 447, the Supreme Court of Connecticut said: "The only duty which rested upon any of the defendants was to use reasonable care to make and keep these premises and the amusement apparatus thereon reasonably safe for the visitors who were invited to enter and use them."

The same standard of care for operators of such places has been recognized in Louisiana. In Givens v. De Soto Bldg. Co., 156 La. 377, 378, 100 So. 534, 536, the Supreme Court of Louisiana said: "Now the operator of a theater is not an insurer of his patrons. He need only be free from negligence; and, granting that a prudent man must exercise some degree of foresight, nevertheless he is not required to foresee that something may happen, when long experience fails to show any such happening before, unless the circumstances are such that he should have known that the happening was likely even though it had not yet occurred."

In McKelvy v. Capitol Amusement Co., 159 So. 143, 145, the Court of Appeal for the second circuit applied the same standard, saying: "Operators of theaters are not insurers of their patrons. They are required only to be free from negligence. They must take reasonable precautions to prevent injury, but are not required to guard against something that may happen unless happening appears likely."

Plaintiffs declare that the standard of care which the law sets for operators of such devices is extremely high, and that the burden is on such operators to show that such an accident "could not have been prevented by human foresight." Our attention is directed to the case entitled Kehoe v. Central Park Amusement Co. (C.C.A.) 52 F.(2d) 916, 918, in which the court held that it was error to refuse to give to the jury the following instruction:

"The owner of a place of public entertainment is bound to use the utmost degree of diligence and care to keep the premises safe for public use, and patrons have a right to assume he has performed this duty; and when a person is injured by reason of some defect in the means of transportation or in the manner of operation the burden is on the owner to show it could not have been prevented by human foresight."

Plaintiffs also cite Lausterer v. Dorney Park Coaster Co., 100 Pa.Super. 33, in which a roller coaster accident was involved, and in which case the court held that it is the duty of the operator of such a device "to take all the precautions to

prevent any accident that might reasonably be anticipated in its use"; and that "the owners of an amusement appliance arc not deemed common carriers although under some circumstances the degrees of care required may be just as high." Syllabus. Whether the standard set by the courts in the two last-cited cases is too high, or whether the burden is upon the operator of such a device as a "shoot-the-chute" to absolve himself from negligence, we find it unnecessary to determine, because we conclude that here defendant, whether the burden is placed upon him or not, has successfully borne that burden and has absolved itself from negligence even if the standard contended for be applied.

Of course, it must be conceded that the accident would not have occurred had the entire platform and all the sides of the chute been impenetrably barricaded with boards, but that would have changed the entire nature of the device. There is no duty even on a carrier to make accidents impossible. The duty is limited to the use of such precautions and such protective devices as will prevent such accidents as, according to the language of the Lausterer Case, "might reasonably be anticipated."

■ While it is true that the fact that there has been no other similar accident on such a device may not be conclusive proof of the fact that the device is safe, still evidence that hundreds of thousands of others have used it without injury may be availed of for the purpose of showing that the operators were not negligent in failing to anticipate and guard against such an accident. In Godfrey v. Connecticut Co., supra, the court said: "The single instance of the accident to the plaintiff, even if it be admitted that it happened as he claims it did, does not reveal the existence of any danger in the use of the contrivance which should have been reasonably anticipated. It would not justify the conclusion that reasonable care had not been previously exercised, when balanced against the unquestioned evidence that more than 25,000 persons have used this appliance and another like it without a single complaint of injury. Moreover, in view of such experience in the operation of this device, it could not be found reasonably that there was any fault or danger in the apparatus itself, or in its customary and careful use, which the de-fendants knew, or in the exercise of the care imposed upon them should have known."

In Denver Park & Amusement Co. v. Pflug (C.C.A.) 2 F.(2d) 961, 963, appears the following: "Sixty thousand patrons had been over this belt that season and this was the only accident. Under those facts the injury to Mrs. Pflug, or a like injury to some other person, could not have been foreseen nor reasonably anticipated as the probable result of the negligence relied upon. No such thing had ever happened before. Past history and experience would not have suggested to prudent men that it would happen, but on the contrary that experience, if suggestive at all, would be indicative that it would not and could not happen, and the defendant was not under a duty to guard against what did happen."

See, also, Hubbell v. Yonkers, 104 N. Y. 434, 10 N.E. 858, 860, 58 Am.Rep. 522, in which the court said: "That which never happened before, and which in its character is such as not to naturally occur to prudent men to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening, and guarding against that remote contingency."

■ The petition contains no allegation concerning the surface of the platform of the device; no charge that it is negligence to fail to cover such a surface with a rubber or a cocoa mat, or with some such similar material. Nevertheless, counsel for plaintiffs maintain that we may consider the contention that it is negligence to maintain such a device without some such covering upon the platform. The contention that we may give consideration to this charge is based on the theory that the evidence which it is contended sustains the charge was permitted to go into the record without objection. It is argued that the issues were thus enlarged, and, as supporting this argument, we find cited certain decisions of our Supreme Court.

In Houston River Canal Co. v. Reid, 127 La. 630, 53 So. 887, 888, the court held that: "The admission of evidence outside the issues without objection has the effect of enlarging the pleadings, so as to include issues so raised." Syllabus.

This principle is so well established that we deem it unnecessary to quote further

authority, but for convenience set forth several citations in which it has been followed: Bell v. Globe Lumber Co., 107 La. 725, 733, 31 So. 994; Wells v. Blackman, 121 La. 394, 46 So. 437; Taglialavore v. Caernarvon Drainage District, 153 La. 811, 96 So. 665; Novelty Neckwear Co. v. Dwyer Bros., 3 Orleans App. 415; Standard Distilling Co. v. Aronson, 9 Orleans App. 323; Purser v. Hyams Coal Co., 6 La.App. 687; Jackson v. Young, 6 La. App. 854.

But whether we may consider that, by the evidence referred to, the issues tendered by the pleadings have been enlarged, depends upon whether that evidence was admissible under other issues which were presented by the pleadings. If the evidence to which plaintiffs point was admissible under and in support of other allegations, then objection could not have been successfully urged thereto when it was adduced, and, consequently, it cannot be availed of as having the effect of introducing new issues. In Choppin et al. v. Dauphin, 112 La. 103, 128, 36 So. 287, 296, the Supreme Court, considering this question, said: "If the evidence was admissible under the pleadings, its admission without objection clearly could not have the effect of enlarging the pleadings."

In McAdam v. Soria, 31 La.Ann. 862, the court held that: "The failure to object to the admission of evidence bearing on an issue not made by the pleadings will not authorize the adjudication of that issue, when the evidence admitted is applicable to the issue made by the pleadings." Syllabus.

The evidence to which plaintiffs point was not necessary in support of any issue tendered by the pleadings. It is argued that the testimony was adduced merely as a part of the general description of the device, and that, since a clear understanding of the construction features is necessary, the evidence must, in any event, have been admitted for that purpose. We think, however, that that evidence had more than descriptive value. It was not necessary to a consideration of the issues tendered that we know whether the surface was bare or whether it was covered, and, consequently, evidence showing that it was bare, if followed by proof that such a surface is dangerous, would have raised a new issue.

The evidence in question was elicited from a companion of the injured boy, and it is as follows:

"Q. Do you know what the flooring was—what material? A. The flooring was board.

"Q. Was there anything on the board? A. White paint.

"Q. But I mean was there anything like a rubber mat or a cocoa mat? A. Nothing.

"Q. Just the plain painted boards? A. Yes, sir."

But we find nothing on which we may base the conclusion urged by plaintiff, that such a surface is dangerous. It may be that the manufacturers of such devices have, by experience, found that bare wood is not dangerous; that it is in fact safer than other materials. At any rate, we cannot, without proof, assume that there are other materials which would be safer.

We conclude, then, that there was no negligence in defendant on any of the issues tendered by the pleadings or by the record.

The charge that the boy himself was negligent in his method of using the device need not be considered.

The judgment appealed from is affirmed.

Affirmed.