YARRUT, Judge.
Plaintiff appeals from a judgment dismissing her suit. Defendants are the operator of a moving picture theatre and its liability insurer, respectively.
Plaintiff claims that while a patron in a theatre operated by insured on December 8, 1956, about 5:30 p. m.„ witnessing a motion picture, a piece, of fiber glass from the air-conditioning system in the theatre lodged in her eye. After wiping her eye with Kleenex and finding blood, she went to the theatre’s dressing room and reported the incident to the matron on duty, having previously notified a theatre usher.
Shortly thereafter, she was treated ac the Charity Hospital. Two days later she returned to the theatre, with her eye bandaged, and complained to the assistant manager, who inquired why she had not notified him sooner. She replied that she had advised the matron and the usher immediately after the accident. The assistant manager testified that he then consulted the matron and all ushers, but none had heard of the incident. The matron was not produced at the trial, having passed away. None of *14 the ushers were produced, since none of them had any knowledge of the incident.
Plaintiff admitted she never saw the object she felt in her eye; did not know whether or not the object was a piece of glass, nor where the object came from. Plaintiff alone testified in her behalf.
The Charity Hospital record is very sketchy, and was admitted in evidence by stipulation, without any explanation from the hospital authorities or the attending physician. The only reference to “glass in the eye” is a notation in the upper left hand corner “glass in eye”, but the body of the card is very illegible and only indicates that the “FB” was removed, evidently meaning “foreign body”.
Defendants’ witnesses were the assistant manager and the chief engineer. The only import of the assistant manager’s testimony is as related hereinabove.
The principal testimony for defendants is that of the chief engineer of the building in which the theatre is located, where he was employed for 36 years. He explained the construction, operation and maintenance of the ventilating system in the theatre. He explained how the air is ventilated into the theatre through ducts and 286 filters. The filters are made of fiber glass located five feet in front of the blowers. The fiber glass itself is imbedded in a network laced together with a metal grill-work over the face, and the air pulled through the fiber glass. After leaving the blower, the air goes through sound absorbers into various air ducts, up a riser about 35 feet, and then into the center of the orchestra, from where it is diffused into the theatre auditorium; that the circulation of the air as it leaves the filters has no velocity, is almost still and incapable of carrying anything; that no glass had ever been found or complained about in the auditorium of the theatre. He likened the theatre to the condition in the court room where the case was being tried, explaining that a small scrap of paper, if held in the theatre, as then in the court room, would drop to the floor and not float away; hence, could never have reached the auditorium of the theatre; that the air-conditioning filters are checked every six weeks and cleaned of dust deposited during filtration; that the blowers pull the air out and keep it circulating; that the blowers did not have sufficient velocity to pull the fiber glass or fragments through the filters, because the grill-work was in front. When asked if a small piece could come through a half inch opening in the grill, he said that anything is possible, but the velocity was not sufficient to carry it into the auditorium.
The duty a theatre owner owes to its patrons is clearly set forth in the case of Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444, to the effect that, although proprietors of places of amusement operated for profit are not' insurers of the safety of their patrons, they are charged with the duty to use reasonable or ordinary care to keep their premises in such a safe condition that invitees will not be unnecessarily exposed to danger; and to give warning of any hidden dangers that may not be observable in the exercise of ordinary care by the invitee. Since partial darkness is essential to the conduct of a motion picture exhibitor’s business, the exhibitor is held to a stricter account in the exercise of reasonable and ordinary care to keep his premises in a safe condition for use of his patrons.
Once a patron of a theatre shows that he has been injured as a result of some act of omission or commission on the part of the theatre operator, the duty shifts to the theatre operator to prove its freedom from negligence, not how the accident occurred.
In the cases cited by plaintiff, there was no dispute that the patron was injured because of a defect in the building, such as falling plaster, defective staircases or unlighted and dangerous passage-ways, and. *15 the injured patron had proved the injury-occurred as a result of an act of omission or commission on the part of the theatre owner.
The theatre owner here sustained the burden of proving its freedom from negligence. The only testimony of causation is the testimony of plaintiff, unsupported by any corroborating witness or facts.
For the reasons assigned, we are constrained to hold defendants have proved the theatre owner’s freedom from negligence, either of omission or commission; hence the judgment of the trial court must be affirmed.
Affirmed.