162 So.2d 32 (1964)
Dr. C. J. GILLIAM, Individually and on Behalf of His Minor Daughter, Cutrell Gilliam, Plaintiff-Appellant,
v.
Ferrona SERRANO d/b/a Louisiana Greater Shows and National Indemnity Company, Defendant-Appellees.
No. 6040.
Court of Appeal of Louisiana, First Circuit.
January 27, 1964.
Rehearing Denied March 2, 1964.
Writ Refused May 4, 1964.
*33 Benton & Moseley, by Thomas H. Benton, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, by William A. Norfolk, Sanders, Miller, Downing, Rubin & Kean, by John D. Powers, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
Dr. C. J. Gilliam instituted this action against Ferrona Serrano, d/b/a Louisiana Greater Shows, and National Indemnity Company, the liability insurer of the defendant. The plaintiff seeks individually to recover $125.00, being the sum spent by him for medical treatment for his six year old daughter, Cutrell Gilliam; and also seeks, on behalf of his daughter to recover $15,000.00 for physical disability, pain, suffering, traumatic neurosis and permanent emotional disability. The defendant, Ferrona Serrano, was apparently never cited by the Sheriff's office. Defendant National Indemnity Company filed an answer and third party demand against Dr. C. J. Gilliam individually, alleging negligence on his part and seeking to recover from him as a joint tort feasor one-half of whatever damages might be awarded him on behalf of Cutrell. The trial judge rendered judgment below dismissing plaintiff's suit and he has appealed.
On May 6, 1962, Dr. C. J. Gilliam took his three children, ages six, four and three, *34 to a church sponsored fair. The fair consisted of a ferris wheel, an electric train ride, a roller coaster ride and a "paratrooper" arranged in a rough circle approximately 300 feet in diameter. Just outside that circle between the ferris wheel and train a cotton candy concession was operated. Dr. Gilliam allowed his children to ride the train, and then allowed Cutrell to ride the roller coaster. During the roller coaster ride Dr. Gilliam stood near the entrance to the train ride about 40 feet from the exit of the roller coaster, holding his other two children and watching Cutrell as she rode. He was also conversing with friends, one of whom was Mrs. Ruby James.
When Cutrell alighted from the roller coaster, she began to walk toward her father. Mrs. James described the walk as very slow and staggering but admits that she hardly noticed Cutrell, her interest being directed toward two other children who alighted from the roller coaster and toward her own child who was enjoying his first train ride. Dr. Gilliam described the walk as very fast and not staggering. As Mrs. James was obviously testifying from a momentary impression we do not consider the difference important and we are inclined to accept Dr. Gilliam's version.
Suddenly Cutrell veered to her right and walked toward the barrier marking the train ride. At this point Dr. Gilliam called to her and then realizing she might be in danger, started toward her. He then went back to the group to deposit his other two children. Cutrell entered the train area a few feet from the gate as the train was passing that point and began running in the direction the train was moving. When about one-quarter of the way around the 100 foot (circumference) circular track, she was hit by the train and knocked down. The front guide wheels of the 200 pound engine passed over her chest causing multiple bruises, cuts and four broken ribs.
There is some disagreement as to whether Cutrell was hit by the train immediately or whether the train completed a circular passage at a speed of ten feet per second and then hit her. Also, there is disagreement as to whether Cutrell crossed the track into the center part of the circle and was hit recrossing it, or whether she was hit on her initial attempt to cross the track. These points need not be reconciled.
The barrier around the train area was obviously not designed to keep children out, but rather only to mark the area. It consisted of two horizontal chains supported by steel posts. The chains were positioned at heights of one and two feet above the ground measured at the posts. Any child from crawling age up would have no difficulty in going under, through or over the barrier.
The law places a duty on the operator of an amusement of this character to exercise
"* * * the degree of care that would be expected of an ordinarily careful and prudent person in his position, and his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place." Sistrunk v. Audubon Park Natatorium Inc., La.App., 164 So. 667, 669.
This duty was increased somewhat by Cavicchi v. Gaiety Amusement Co., Inc., La. App., 173 So. 458. In that case the court used the following language found at page 460:
"When he caters to extremely young children, the degree of care which he must exercise naturally increases."
In view of that language, we cannot agree with the defendant's argument that in the Cavicchi case the age of the child was important only in determining whether the doctrine of res ipsa loquitur should be applied.
It is evident that while an amusement park operator is not an insurer of his patrons, he has the duty to make his premises *35 reasonably safe, and this is certainly more than a duty to warn the patrons of danger. The issue before this court is, therefore, was the defendant operator negligent?
Article 10 of plaintiff's original petition alleges the defendant was negligent for his failure "* * * to properly block off the railroad tracks in order to prevent children from wandering onto the tracks." We believe that this point is well taken.
The character of the fence and its ineffectiveness as a barrier against wandering children has already been discussed. Certainly the operator of the train ride could foresee the presence of children, riding, looking on, and anxiously pushing to ride the device. He should, therefore, make some reasonable attempt to erect a real barricade and failure to do this is negligence.
It becomes unnecessary to consider whether the doctrines of last clear chance and attractive nuisance apply in this instance, having determined that the defendant negligently designed the barrier.
The finding of negligence in the case at bar is to be distinguished from the finding of no negligence by the court in the Sistrunk case, for in the latter instance the court noted 164 So. at page 669:
"With such construction as is testified to * * * there was no reason for any one to anticipate that there was danger of such an occurrence as the boy testified took place on this occasion."
Williams v. Lowes, Inc., La.App., 126 So. 2d 13, is a similar case in which the defendant avoided liability to a theater patron who got glass in her eye while seated in the theater. The court was convinced that the ventilating system did not produce sufficient wind velocity to sustain the foreign object, the presence of which was otherwise unexplained.
The defendant has alleged four acts of contributory negligence on the part of Dr. C. J. Gilliam, as follows:
(a) Permitting his minor daughter to roam, unsupervised and unattended, after dark, at a street fair;
(b) Taking three minor children, all 6 years of age or younger, to a street fair, after dark, when he knew or should have known that he would be unable to give them proper supervision;
(c) Failure to make himself available at the time and place when and where his daughter, Cutrell Gilliam, would alight from the particular amusement ride on which she was riding just prior to the accident;
(d) Other acts of negligence.
The facts of the case simply do not support the first alleged act of contributory negligence. Cutrell was not permitted to run unsupervised, but rather was at all times under the watchful eye of her father who was always less than 40 feet away. As to the second and third alleged acts of contributory negligence, this court is not prepared to say that it is per se negligent to take three children to a church fair, or that it is per se negligent to allow a six year old child to walk along for 40 feet under the eye of her father. The omnibus fourth specification of negligence was unsupported.
The plaintiff has sought to recover the sum of $175.00 representing estimated surgical fees and hospital expenses for a proposed operation on a minor scar on Cutrell's head. There is some dispute as to whether or not the current difficulty with the scar was caused by the accident. However, as nowhere in the plaintiff's pleadings is any mention made of this injury, and as the defendant timely objected to all testimony relative thereto, this court must disallow that claim.
*36 Plaintiff is entitled to recover the sum of $125.00, individually, representing actual medical expenses expended by him for the care of his minor daughter, Cutrell.
Dr. Joseph R. Hirsch, specializing in the treatment of children, testified he examined Cutrell shortly after the accident and found abrasions and contusions on the abdomen and chest. The child had cuts and bruises on multiple areas of the body. The x-rays revealed four fractured ribs but no other serious internal injuries. The child was hospitalized for approximately 48 hours.
In Vidrine v. Southern Farm Bureau Casualty Insurance Co., La.App., 105 So.2d 279, the injuries were very similar to the injuries in the instant case and required five days hospitalization. The court awarded the plaintiff $1,500.00.
In the case of Baumann v. Allstate Insurance Company, La.App., 107 So.2nd 805, $2,000.00 was awarded for the fracture of three ribs, lacerations of both shoulders and chest, and a slight back sprain.
Accordingly, we feel an award of Fifteen Hundred Dollars ($1,500.00) for pain, suffering and the like would adequately compensate the plaintiff in this case.
The decision of the trial court is hereby reversed and judgment entered in favor of the plaintiff, Dr. C. J. Gilliam, individually, in the amount of $125.00, and in favor of Dr. C. J. Gilliam on behalf of his minor daughter, Cutrell Gilliam, in the amount of $1,500.00, and against the defendants, Ferrona Serrano d/b/a Louisiana Greater Shows, and National Indemnity Company, in solido.
Reversed.
LANDRY, Judge (dissenting).
While I believe the majority opinion rendered herein has correctly stated the rule regarding the degree of care owed by an operator of an amusement park to his patrons, especially children of tender years, in my humble judgment the facts of the instant case do not disclose failure on defendant's part to exercise the care required under the attending circumstances.
I deem of considerable significance the fact that this case does not concern the alleged negligent operation of an amusement device resulting in injury to a child enjoying the pleasure and delight the contrivance was intended to confer. The case, however, deals with an unattended child who wanders through a restraining barrier and enters an area wherein a mechanical device is being operated and is injured before the attendant on duty is able to stop the contrivance. We are not here concerned with an injury occurring in an aisle, passageway or other area where patrons have a right to be, but rather with an injury occurring within the barricaded area wherein is operated a mechanical device. Clearly the child in question had no right to be present in the area under the circumstances related in the majority opinion. The sole question, therefore, as I see it, is merely whether, under the circumstances shown, defendant operator was negligent in not providing a barrier of greater deterrent effect.
My perusal of the record reveals the barrier in question consisted of two strands of rope or cable, the lower strand being suspended approximately one foot above the ground and the upper strand being approximately one foot above the one below. The jurisprudence as announced in Sistrunk v. Audubon Park Natatorium, La.App., 164 So. 667, establishes the rule that the operator need not erect a fool proof barrier but discharges the duty of care incumbent upon him when he takes such precautions as are reasonable under the circumstances.
I believe the reasonableness of the precaution of providing the above described barrier must be considered in the light of the nature of the device which caused the injury herein sued upon. The record reveals the device in question to be an electrically operated miniature train run on a *37 circular track approximately one hundred feet in circumference. The engine of the train weighs approximately 200 pounds but the approximate weight of the cars, in which the children are carried as passengers, is not disclosed by the evidence. It further appears the train makes a complete circle of its track in approximately 10 seconds which means it travels 10 feet per second or approximately 6.8 miles per hour. Such a device, in my judgment, though presenting the possibility of danger, is neither inherently dangerous nor dangerous per se.
My consideration of the record further reveals the child in question wandered into the area of operation by crawling under or through the restraining barrier while in a state of dizziness or mental confusion induced by her having participated in another amusement device consisting of some sort of variously described "ride" situated approximately 50 feet distant from the "train". Plaintiff parent, as well as an acquaintance who stood nearby, testified the child "staggered" or "reeled" as she departed from the first ride and "veered" toward the restraining barriers erected by defendant. I do not believe it reasonably foreseeable that a child six years of age would under such circumstances disregard the barrier in question especially so when, in my judgment, experience teaches children who frequent such places of amusement are invariably attended by an adult or other responsible person who supervises their conduct and looks after their safety and welfare. I also believe that to a degree the operator may rely to a limited extent on the fact that a child will be accompanied by a mature, responsible attendant although clearly the operator may not depend upon such circumstance and take no precaution whatsoever. Granted the operator must anticipate the natural curiosity of children of tender years and their insensitivity to danger, nevertheless in my judgment he is charged with anticipating only that which is reasonably foreseeable. I do not believe it foreseeable that a child in a state of mental confusion induced by riding on one device will immediately thereafter elude his or her attendant, dash through a restraining barrier of the type herein involved, and receive injury while attempting to leap in front of a miniature train in the manner indicated by this record.
In short, I believe the net effect of the majority decision herein is to make the operator the virtual insurer of the safety of his patrons contrary to established jurisprudence which holds the operator only to the duty of reasonable care under the attending circumstances.
Therefore, I respectfully dissent.